RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0028p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

TAMMY BERERA, Individually and on behalf of all
others similarly situated,

        *Plaintiff-Appellant,*

    *v.*

MESA MEDICAL GROUP, PLLC,

        *Defendant-Appellee.*

No. 14-5054

———————————

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:13-cv-00294—Joseph M. Hood, District Judge.

Decided and Filed: February 19, 2015

Before: KEITH, MOORE, and STRANCH, Circuit Judges.

———————————

### COUNSEL

**ON BRIEF:** J. Dale Golden, Justin S. Peterson, GOLDEN & WALTERS, PLLC, Lexington, Kentucky, for Appellant. Daniel E. Danford, STITES & HARBISON, PLLC, Lexington, Kentucky, for Appellee.

———————————

### OPINION

———————————

DAMON J. KEITH, Circuit Judge. The basic issue in this case is whether Plaintiff Tammy Berera asserted state-law claims for unpaid wages or a federal claim for a refund of taxes under the Federal Insurance Contribution Act ("FICA"). *See generally* 26 U.S.C. §§ 3101–3128. FICA imposes a 7.65% tax on the wages of employees to fund Social Security and Medicare. *See* 26 U.S.C. § 3101. Employers must collect this tax from their employees' wages. *Id.*

1

§ 3102(a).  FICA also imposes a matching tax on employers equal to the 7.65% tax imposed on employees' wages.  *See* 26 U.S.C. § 3111.  Berera asserts that her employer, Defendant Mesa Medical Group, PLLC ("Mesa"), wrongfully collected both her share and Mesa's share of the FICA tax from her wages.

Applying the artful-pleading doctrine, the district court held that the plaintiff's purported state-law claims were FICA claims in disguise.  Consequently, the district court dismissed the plaintiff's claims under 26 U.S.C. § 7422(a), which requires parties seeking a refund of federal taxes to file a claim with the IRS before bringing a federal tax refund suit.  Because we agree that the plaintiff's purported state-law claims are truly FICA claims, we **AFFIRM**, as modified, the district court's judgment.

## I.     BACKGROUND

Mesa is a health care organization.  Berera worked at Mesa as a nurse practitioner from July 2011 to February 2013.  After Berera's employment ended, she allegedly discovered that the wages on her W-2 did not reflect the amount of wages that Mesa owed her.

On June 25, 2013, Berera filed a class-action Complaint against Mesa in Kentucky state court.  Berera alleged that the class consisted of current and former employees whom Mesa "forced to pay [Mesa's] share of payroll taxes and other taxes and withholdings."  R. at 21, ¶ 4.[1] Berera further alleged that this "forced payment resulted in the employees receiving less money than they earned and were entitled to as wages."  *Id.*  Likewise, Berera alleged that Mesa paid its current and former employees "an amount less than the wages and overtime compensation to which the employees were entitled . . . ."  R. at 22, ¶ 14.  The Complaint contained no additional substantive allegations.  Based on these allegations, Berera asserted: (1) an unpaid wages claim under section 337.385 of the Kentucky Revised Statutes; and (2) a negligence claim under Kentucky law. Berera twice amended her Complaint, adding (1) a claim for conversion under Kentucky law and (2) Katisha Kabalen as a class member.  *See* R. at 51, 178.[2]

---

[1]"R." designates citations to the paginated record of the proceedings below.  Thus, "R. at 21" refers to PageID 21.

[2]Unless otherwise noted, "Complaint" refers to the Second Amended Complaint, which is the controlling pleading. *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013) ("An amended complaint

Mesa filed a motion for a more definitive statement, arguing that the nature of Berera's claims was unclear.  On August 9, 2013, while this motion was pending, Mesa's counsel, Hunter Hughes, wrote Berera's counsel, Dale Golden, a letter. R. at 303.  In the letter, Hughes refers to a conversation with Golden on August 8, 2013.  During this conversation, Hughes allegedly asked Golden to clarify the factual basis of Berera's claims.  According to Hughes, Golden responded that Hughes might be able to identify the basis of Berera's claims by reviewing company records of employee complaints to the IRS.  Hughes further states that this conversation "led [him] to conclude that the conduct at issue related to federal withholding matters." *Id.*  Thus, Hughes declares that Mesa would assume that the Complaint contained at least one FICA claim unless Golden notified him otherwise by August 13, 2013.  R. at 304.

On August 14, 2013, Berera's counsel responded to the letter via email. R. at 87.  The email stated, without further elaboration, that Berera's counsel disagreed with the "characterizations and assumptions contained within the letter."  R. at 87.

On August 26, 2013, Mesa's counsel met with Berera's counsel to discuss a potential settlement.  At this meeting, Mesa produced a sample of Berera's payroll documents for the month of October 2011.  The sample consists of: (1) a document showing hours, hourly wages, gross wages, and adjustments to gross wages ("Wage Table"); (2) a check stub; and (3) an employer copy of Berera's W-2.  R. at 380, 722–23.

The Wage Table indicates that, in October 2011, Berera worked a total of 227 hours at an hourly rate of $45.00.  Thus, Berera's total, unadjusted compensation was $10,215 (227 x $45).  We refer to Berera's total, unadjusted compensation of $10,215 as "Total Gross Wages."  Further, the Wage Table shows that Mesa made two adjustments totaling $1,328.76 to the Total Gross Wages of $10,215.  One of these adjustments, the "Benefits Adjustment," is $648.96.  The Benefits Adjustment represents the cost of Berera's benefits (e.g., health insurance).[3]  The other adjustment, the "First Adjustment," is $679.80.

---

supersedes an earlier complaint for all purposes." (citing *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 456 n.4 (2009))).

[3]Berera asserts, in passing, that the Benefits Adjustment is excessive.  However, she failed to adequately raise this argument before the district court or present it in her Appellant Brief.  Therefore, we deem it waived. *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 462 (6th Cir. 2003) (citation omitted) ("An appellant waives an

Berera asserts that the First Adjustment of $679.80 is an excessive withholding of her wages. Berera's check stub for October 2011 shows that Mesa paid her $8,886.24. This payment of $8,886.24, the "Adjusted Gross Wages," is the difference of the Total Gross Wages minus the Benefits Adjustment and First Adjustment ($10,215 - [$648.96 + $679.80]). But the check stub shows that Mesa withheld an additional $502.77 from the Adjusted Gross Wages of $8,886.24. R. at 722. This additional adjustment of $502.77, the "Second Adjustment," reflects the amount of FICA taxes that Berera owed in 2011. For, while employees currently must pay 7.65% of their wages in FICA taxes, Congress lowered the FICA tax on employees to 5.65% in 2011–12.[4] [5] Berera contends that, because Mesa made the Second Adjustment equaling her share of the FICA tax, it had no basis to make the First Adjustment of $679.80. Thus, Berera concludes that the First Adjustment is an improper withholding of her wages.

On August 30, 2013, the state court held a hearing on Mesa's motion for a more definitive statement. *See* R. at 214. Attorney Justin Peterson represented Berera at this hearing. Peterson conceded at the hearing that the allegedly improper First Adjustment of $679.80 corresponded to Mesa's share of the FICA tax. *See* Hearing Tr., 15:9–15, 16:2–3, 16:18–25, 18:7–14, Doc. No. 1-7.[6]

On September 11, 2013, Mesa removed the case to the United States District Court for the Eastern District of Kentucky. *See* R. at 1. In its Notice of Removal, Mesa asserted that it removed the case within thirty days of receiving "other papers" under 28 U.S.C. § 1446(b)(3) that first demonstrated the presence of federal question jurisdiction under FICA and the Class Action Fairness Act ("CAFA"). R. at 6. According to Mesa, these "other papers" (i.e., court documents) included the transcript of the August 30 hearing.

---

issue when he fails to present it in his initial briefs before this court."); *Sigmon Fuel Co. v. Tenn. Valley Auth.*, 754 F.2d 162, 165 (6th Cir. 1985) (citing cases) ("[W]e have declined to review arguments not presented to the district court in the first instance.").

[4]Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010, Pub. L. No. 111-312, § 601(a)(2), (c), 124 Stat. 3296 (2010), *amended by* Pub. L. No. 112-96, § 1001(a), 126 Stat. 156 (2012).

[5]However, in 2011–12, the employer share of the FICA tax remained 7.65% of the employee's wages. *See* statutes cited *supra* note 4.

[6]Doc. 1-7 refers to the seventh attachment to the first entry on the district court docket.

On October 11, 2013, Berera filed a Motion to Remand. *See* R. at 454. Berera made three primary arguments in her Motion to Remand. First, Berera argued that her claims were state-law claims for unpaid wages and, hence, there was no basis on which to remove the case to federal court. Second, Berera argued that Mesa's Notice of Removal was untimely because Mesa filed it more than 30 days after receiving notice of the supposed federal nature of her claims. *See generally* 28 U.S.C. § 1446(b). Third, Berera argued that there was no basis on which to remove the case under CAFA.

On December 6, 2013, the district court issued an opinion and order denying Berera's Motion to Remand and ordering her to show cause why it should not dismiss her claims for failure to state a claim. *See* R. at 681. The district court held that Berera's purported state-law claims amounted to a federal tax refund suit. The district court reasoned that the record clearly showed that Berera was attempting to recover FICA taxes that Mesa wrongfully withheld from her paycheck. *See* R. at 684, 686, 694. In so holding, the district court relied primarily on two factors: (1) the Complaint's allegation that Mesa forced Berera to pay Mesa's "share of payroll taxes and other taxes and withholdings"; and (2) Berera's counsel's concession at the August 30 hearing that the First Adjustment "was equal to [Mesa's] obligation under FICA." R. at 686–87. Further, the district court concluded that, even if Mesa did not remit the withheld wages to the IRS, the suit was still a tax refund suit because Mesa "collected [the wages] as a tax." R. at 688. Given its determination that Berera asserted a FICA claim and that federal question jurisdiction existed, the district court declined to consider Mesa's alternative argument that jurisdiction was proper under CAFA. R. at 695 n.4.

The district court also addressed Berera's argument that Mesa untimely filed its Notice of Removal. Based on the August 9, 2013 letter, the district court suggested that Mesa lacked adequate notice that it could remove the case until August 13, 2013. *See* R. at 694 n.3. The district court then noted that Mesa filed the Notice of Removal on September 11, 2013, which is within 30 days after August 13. Therefore, the district court concluded that the Notice was timely under § 1446(b).

After concluding that Berera truly asserted FICA claims, the district court held that taxpayers seeking a refund of FICA taxes must file an administrative claim with the IRS before

bringing an action in federal court.  R. at 696.  Accordingly, as Berera failed to file a claim with the IRS, the district court ordered her to show cause why it should not dismiss her claims under Federal Rule of Civil Procedure 12(b)(6). R. at 697.  On December 19, 2013, Berera responded to the show cause order.  Unconvinced by the response, the district court dismissed Berera's Complaint, with prejudice, in an order filed on January 3, 2014.  *See* R. at 713.

Berera appealed, largely repeating the arguments that she made in her Motion to Remand.  However, Berera raises a series of new arguments in connection with the Wage Table.  These arguments, which are fact-intensive and rely heavily on algebra, purport to show that the First Adjustment is a fraudulent reduction of Berera's wages.  Mesa responded, likewise repeating many of the arguments it made before the district court.  Further, Mesa argues that Berera waived several of the new arguments she raises on appeal.

## II.    STANDARD OF REVIEW

"[W]e review denials of remand motions *de novo*."  *Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 338 (6th Cir. 1989) (citations omitted).  Likewise, we review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6). *Nat'l Air Traffic Controllers Ass'n v. Sec'y of Dep't of Transp.*, 654 F.3d 654, 657 (6th Cir. 2011) (citation omitted).  We also review *de novo* whether removal was timely under § 1446(b).  *See Music v. Arrowood Indem. Co.*, 632 F.3d 284, 286 (6th Cir. 2011).

## III.    ANALYSIS

In deciding whether the district court erred in dismissing Berera's suit, we must address three fundamental questions.  The first question is whether Berera's purported state-law claims for unpaid wages are a FICA refund claim in disguise.  Second, if Berera asserted a FICA refund claim, the question is whether § 7422(a) dictates dismissal of said claim for failure to exhaust remedies with the IRS.  Third, we must consider whether Mesa timely removed the case.  We answer these questions affirmatively.

## A.    Federal Question Jurisdiction—Artful Pleading

Where, as here, there is no diversity jurisdiction, a defendant may remove an action to federal court only if the plaintiff's allegations establish federal question jurisdiction. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007). To determine whether federal question jurisdiction exists, we consider the "well-pleaded" allegations of the complaint. *Id.* (citation omitted) (internal quotation marks omitted). Under the well-pleaded complaint rule, the plaintiff "is master to decide what law he will rely upon." *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 515 (6th Cir. 2003) (citation omitted) (internal quotation marks omitted). Thus, ordinarily, the plaintiff may obviate removal to federal court by exclusively pleading state-law claims. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 399 (1987) ("[T]he plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court."); *Loftis*, 342 F.3d at 515 (citation omitted) (internal quotation marks omitted) ("Generally, a state law claim cannot be recharacterized as a federal claim for the purpose of removal."). The corollary of this rule is that federal question jurisdiction exists when the plaintiff's "statement of his own cause of action shows that it is based upon [federal law]." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) (citation omitted) (internal quotation marks omitted).

The well-pleaded complaint rule has exceptions. *Mikulski*, 501 F.3d at 560. One is the artful-pleading doctrine. *Id.* Under the artful-pleading doctrine, "plaintiffs may not avoid removal jurisdiction by artfully casting their essentially federal law claims as state-law claims." *Id.* (citation omitted) (internal quotation marks omitted). Where it appears that the plaintiff may have carefully crafted her complaint to circumvent federal jurisdiction, "we consider whether the facts alleged in the complaint actually implicate a federal cause of action." *Id.* at 561.

Here, the Complaint's allegations show that Berera artfully pleaded a FICA claim as state-law claims for unpaid wages. The Complaint unequivocally states that the putative class on whose behalf Berera sues consists of Mesa employees whom Mesa has "forced to pay [Mesa's] share of payroll taxes and other taxes and withholdings." Although Berera also alleged that this forced payment caused the employees to receive an underpayment of wages, the Complaint states that the underpayment of wages "resulted" from the forced payment of payroll taxes. Therefore, the allegation regarding the forced payment of payroll taxes is the factual foundation

of Berera's purported state-law claims. Furthermore, although the Complaint does not expressly mention FICA taxes, it is well understood that the employer must calculate its share of the FICA tax by reference to "wages paid by the employer." 26 C.F.R. § 31.3111-2(c). Thus, we read Berera's reference to "payroll taxes" as an artful reference to FICA taxes. Indeed, Berera conceded at the August 30 hearing that the First Adjustment corresponded to Mesa's share of the FICA tax. Accordingly, Berera's purported state-law wage claims are truly a FICA refund claim.[7][8]

**B.      26 U.S.C. § 7422(a)—Failure to Exhaust**

Section 7422(a) places restrictions on tax-refund lawsuits. It provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the [IRS], according to the provisions of law in that regard, and the regulations of the [IRS] established in pursuance thereof.

26 U.S.C. § 7422(a).

The exhaustion-of-remedies requirement in § 7422(a) is mandatory. Under § 7422(a), a taxpayer is barred from bringing an action in federal court for a refund of any internal revenue tax or sum erroneously, illegally, or wrongfully assessed "until a claim for refund . . . has been duly filed with the [IRS]." *Compare id.*, *with United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4 (2008) (alteration in original) (citation omitted); *see also Comm'r v. Lundy*,

---

[7]The district court dismissed Berera's Complaint pursuant to Rule 12(b)(6). Generally, when ruling on a Rule 12(b)(6) motion to dismiss, courts may not consider information outside the complaint. *See* Fed. R. Civ. P. 12(d). Therefore, Berera argued below that the district court erred by considering her counsel's concession at the August 30 hearing that the First Adjustment corresponded to Mesa's share of FICA. However, Berera did not raise this argument on appeal, thereby waiving it. *Marks*, 342 F.3d at 462 (citation omitted). Also, we do not rely on this concession for the truth of the matter asserted, i.e., that the First Adjustment actually corresponds to Mesa's share of FICA. Rather, we rely on it only to clarify Berera's artful allegations. *Cf. Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000) (stating that courts may use a party's brief "to clarify allegations in her complaint whose meaning is unclear"); *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 475 (6th Cir. 2008) (per curiam) (stating that, under the artful-pleading doctrine, courts may "look past the words of a complaint to determine whether the allegations, no matter how the plaintiff casts them, ultimately involve a federal question").

[8]Based on our conclusion that the district court had federal question jurisdiction under the artful-pleading doctrine, we decline to address Mesa's alternative argument that federal question jurisdiction existed under CAFA.

516 U.S. 235, 240 (1996) (citation omitted); *United States v. Dalm*, 494 U.S. 596, 609–10 (1990).

At least two circuits have indicated that § 7422(a) mandates dismissal of an employee's unexhausted FICA refund claim against her employer. *See Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 68–69 (3d Cir. 2008); *Johnson v. S. Farm Bureau Life Ins.*, No. 99-30808, 2000 WL 553958, at *1–2 (5th Cir. Apr. 10, 2000) (per curiam). In *Umland*, the Third Circuit held that § 7422(a) mandated dismissal of an employee's claim that her employer wrongfully collected its FICA tax from her. 542 F.3d at 68. The employee filed a class-action complaint against her employer in federal district court. *Id.* at 62. The complaint asserted a claim for, among others, unjust enrichment. To support her purported unjust enrichment claim, the employee alleged that her employer withheld an extra 7.65% of her salary. *Id.* at 67. The employee called this extra withholding "an illegal assessment of the employer FICA tax on the wrong people." *Id.* at 68. The *Umland* court held that this allegation amounted to a FICA refund claim. *Id.* In so holding, the court emphasized the breadth of § 7422(a), including the language that it applies to "*any* suit for *any* sum wrongfully collected in *any* manner." *Id.* (citation omitted); *see also Clintwood*, 553 U.S. at 7 (stating that "Congress meant [§ 7422(a)] to have expansive reach"). Based on this broad language, the court reasoned that § 7422(a) expressly preempted the employee's purported unjust enrichment claim. *See id.* at 68–69. Accordingly, because the employee failed to first file a claim with the IRS as required by § 7422(a), the court affirmed the district court's dismissal of her complaint. *See id.* at 69; *see also Edgar v. Inland Steel Co.*, 744 F.2d 1276, 1278 (7th Cir. 1984) (per curiam) (citations omitted) ("Employees have no cause of action against employers to recover wages withheld and paid over to the government in satisfaction of federal income tax liability."). In *Johnson*, the Fifth Circuit similarly concluded that § 7422(a) mandated dismissal of an employee's unexhausted claim that his employer misclassified him as an independent contractor, thus causing him to pay excessive FICA taxes. *See* 2000 WL 553958, at *1–2. In reaching this conclusion, the court reasoned that "the artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim." *Id.* at *2 (citing *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998)). The

court then held that § 7422(a) completely preempted the claim at issue and affirmed the district court's dismissal thereof.[9] *Id.*

In this case, § 7422(a) mandates dismissal of Berera's FICA claim. The essence of Berera's allegations is that Mesa wrongfully collected its FICA tax from her. By its plain language, § 7422(a) bars such a claim where, as here, the taxpayer fails to first file a refund claim with the IRS. *Umland* and *Johnson* support this straightforward reading of § 7422(a) because those courts dismissed the employees' unexhausted claims that their employers wrongfully/erroneously collected their FICA tax from them. Granted, in so concluding, the *Umland* and *Johnson* courts respectively stated that § 7422(a) expressly and completely preempted the employees' claims. However, as discussed more fully below, we need not decide whether § 7422(a) preempts, regardless of type, an artfully pleaded FICA claim. The fundamental issue is whether Berera complied with § 7422(a)'s mandatory exhaustion requirement. Because she did not, the district court did not err in dismissing her FICA claim.[10]

Berera makes several unpersuasive counterarguments. Berera argues that § 7422(a) does not apply to her claims because the artful-pleading doctrine is limited to cases of complete preemption and § 7422 does not completely preempt her purported state-law claims. However, although "artful pleading and [complete] preemption are closely aligned," they are separate exceptions to the well-pleaded complaint rule. *See Mikulski*, 501 F.3d at 562.[11] For example, in the "airline cases," the Ninth, Seventh, and Fifth Circuits held that § 7422 allowed the airlines to remove purported state-law claims that were truly claims for a refund of taxes that the airlines

---

[9]Complete preemption is the rule that, in rare cases, "the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *See Caterpillar*, 482 U.S. at 393 (citation omitted) (internal quotation marks omitted).

[10]The district court dismissed Berera's FICA claim "with prejudice." R. at 713. But Berera could potentially bring an action against the United States for a refund of the FICA taxes at issue if she exhausted administrative remedies with the IRS. *See* 26 U.S.C. § 7422(f)(1); *but see id.* § 6511(a) (prescribing time limitations on the filing of refund claims with the IRS). Therefore, because the issue of any potential time bar is not before us, we modify the district court's judgment to make the dismissal of Berera's FICA claim without prejudice.

[11]*See also Burda v. M. Ecker Co.*, 954 F.2d 434, 438–39 (7th Cir. 1992) (declining to address district court's determination that federal tax law completely preempted a purported worker's compensation claim and holding that § 7422 dictated dismissal of the claim on the basis that it was "artfully pleaded"); 14B Charles Alan Wright et al., *Federal Practice and Procedure* § 3722.1 (4th ed. 2009) (stating that the view that artful pleading and complete preemption are coextensive "has not been expressly embraced by most federal courts"); 15 James Wm. Moore et al., *Moore's Federal Practice* ¶ 103.43 (3d ed. 2014) (stating that a better expression of the idea that artful pleading and complete preemption are coextensive "is that the complete preemption doctrine is a specific application of the artful pleading doctrine").

erroneously collected on airline tickets. *See generally Brennan v. Sw. Airlines Co.*, 134 F.3d 1405 (9th Cir. 1998); *Kaucky v. Sw. Airlines Co.*, 109 F.3d 349 (7th Cir. 1997); *Sigmon v. Sw. Airlines Co.*, 110 F.3d 1200 (5th Cir. 1997). While these courts stated or indicated that § 7422 "preempted" the purported state-law claims, they did not reach this conclusion based on complete preemption. *See Brennan*, 134 F.3d at 1409 n.3, 1412; *Kaucky*, 109 F.3d at 351; *Sigmon*, 110 F.3d at 1204. In fact, in *Brennan*, the court held that the district court had jurisdiction under the "artful pleading doctrine" and expressly declined to consider whether removal was proper under the complete-preemption doctrine. 134 F.3d at 1409 & n.3. Therefore, to conclude that removal was proper, we need not decide whether § 7422(a) completely preempts Berera's disguised FICA claim.[12] Accordingly, Berera's first argument lacks merit.

Berera also argues that § 7422 does not apply because the First Adjustment is not a tax. Rather, Berera suggests that the First Adjustment constitutes a fraudulent reduction of her wages. Berera contends that Mesa perpetrated the fraud through "creative math" in its payroll accounting process. Appellant Br. at 36. Although Berera's demonstration of Mesa's math is not fully clear, Berera suggests the following: the Wage Table shows that Mesa sought to adjust the difference of her Total Gross Wages less her Benefits Adjustment ("Preadjusted Gross Wages") by an undetermined amount ("First Adjustment") that would equal 7.65% of her Preadjusted Gross Wages minus the First Adjustment. Mesa then subtracted the First Adjustment from Berera's Preadjusted Gross Wages to calculate her Adjusted Gross Wages, from which it made the Second Adjustment. According to Berera, Mesa devised this math to make the First Adjustment correspond to 7.65% of her Adjusted Gross Wages. In Berera's estimation, this correspondence served to hide the fraudulent nature of the First Adjustment, making it look like a legitimate tax or an accounting error.

---

[12]Indeed, we need not decide that § 7422(a) "preempts," irrespective of type, disguised FICA claims. *See generally Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280–81 (1987) (discussing categories of preemption). The cases above likely referenced preemption in holding that § 7422(a) mandated dismissal of the purported state-law claims because "the artful pleading doctrine lacks precise definition and has bred considerable confusion." Wright et al., *supra*, § 3722.1. But preemption is an unnecessary analytical framework for this case because (1) the express allegations of Berera's Complaint, as clarified by her counsel's concession, show that she pleaded a FICA claim; (2) Berera failed to exhaust administrative remedies with the IRS; and (3) § 7422(a) mandates dismissal of unexhausted FICA claims.

Without reaching its merits, we hold that Berera waived this argument. We may decline to review an argument that a party fails to properly "present[] to the district court in the first instance." *Sigmon Fuel*, 754 F.2d at 165 (citing cases). Here, Berera "had a full opportunity to raise [the] argument related to" Mesa's allegedly fraudulent accounting and "offers no explanation for [her] failure to do so." *See United States v. Lawson*, No. 05-5598, 2006 WL 1538889, at *5 (6th Cir. June 5, 2006) (citing *Mich. Bell Tel. Co. v. Strand*, 305 F.3d 580, 589–90 (6th Cir. 2002)). For instance, although the Wage Table was in the record at the outset of removal and Berera filed several motions and briefs challenging removal, Berera made only a "vague, [one-sentence] reference" to her mathematical argument in her response to the district court's show cause order. *Compare Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1398 (6th Cir. 1995), *with* R. at 701 (Berera stating on brief below that "[Mesa] had demonstrated in settlement negotiations that it could calculate a figure that it could tie to an amount that appeared to correlate to an appropriate tax withholding amount"). Furthermore, Berera's math-based arguments implicate factual issues, making them ill-suited to be considered for the first time on appeal. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 244–45 (6th Cir. 1991) (citations omitted). Therefore, we decline to review these intricate arguments for the first time on appeal.

Relatedly, Berera argues that Mesa's alleged fraud removes this case from the scope of § 7422(a). Berera notes that § 7422(a) applies not only to "any internal revenue tax . . . erroneously or illegally . . . collected," but to "any sum . . . wrongfully collected." *See* 26 U.S.C. § 7422(a). Berera then suggests that, even if the First Adjustment is a sum in an ordinary sense, it is not a sum under § 7422(a). To support this argument, Berera characterizes Mesa as a fraudulent "collection agent." *See Kaucky*, 109 F.3d at 351–52. Due to Mesa's alleged fraud, Berera asserts that Mesa lacked even "colorable" authority to collect the First Adjustment. *See id.* at 352. Consequently, Berera concludes that the First Adjustment falls outside of § 7422(a)'s ample ambit. But this argument amounts to an assertion that Mesa wrongfully collected taxes from Berera and, on its face, § 7422(a) applies to "any sum . . . wrongfully collected." Similarly, the *Umland* court held that § 7422(a) applied to the employee's claim that her employer "wrongfully" collected its FICA tax from her. *Umland*, 542 F.3d at 68. Furthermore, in *Kaucky*, the court did not expressly consider whether § 7422(a) would apply if the plaintiff alleged that

the tax collector fraudulently collected the sum and simply suggested in dicta that it would not. *See* 109 F.3d at 353. And the *Umland* court rejected the applicability of *Kaucky*'s dicta to cases where the employer wrongfully collects FICA taxes from its employees. *See* 542 F.3d at 68. Moreover, Berera's sparse and vague allegations are equally, if not more, amenable to an inference of "erroneous[] or illegal[]" conduct, *see* 26 U.S.C. § 7422(a), and she waived the argument that the Wage Table shows fraud. Thus, Berera's suggestion that this case involves fraud finds scant support in the record. Accordingly, the argument that Mesa's alleged fraud removes this case from the ambit of § 7422(a) lacks merit.[13]

Berera's argument that the First Adjustment is not a tax also fails because it contradicts an express allegation in her Complaint. To reiterate, the Complaint states that the putative class consists of Mesa employees whom Mesa has "forced to pay [Mesa's] share of payroll taxes and other taxes and withholdings." Although Berera intimates that she misphrased this allegation, she amended the Complaint twice without substantive change. Where, as here, "the complaint itself gives reasons to doubt [the] plaintiff's theory, and when later pleadings confirm those doubts, it is not our task to resuscitate the claim but to put it to rest." *See NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 458 (6th Cir. 2007) (en banc) (citation omitted) (internal quotation marks omitted).

Additionally, Berera argues that § 7422(a) is inapplicable because there is no evidence that Mesa paid the First Adjustment to the IRS. Hence, in Berera's estimation, the IRS would be unable to provide a remedy. *See In re Air Transp. Excise Tax Litig.*, 37 F. Supp. 2d 1133, 1137 (D. Minn. 1999). But, assuming that Mesa did not remit the First Adjustment to the IRS, Berera presumably could "seek a refund from the IRS, which would in turn seek to collect the employer FICA tax due from [Mesa]." *Umland*, 542 F.3d at 69; *see also Kaucky*, 109 F.3d at 352 (citation omitted) ("It makes no difference whether the firm is still holding the money it erroneously collected or has passed it on to the IRS. . . . The IRS has plenty of remedies against its collection

---

[13]We acknowledge that § 7422 might not apply to a claim that an employer wrongfully and/or fraudulently withheld FICA taxes when the claim is based on stronger allegations and/or evidence of fraud. *See Brennan*, 134 F.3d at 1410 n.5 (suggesting that, in an "extreme" case, § 7422 might have a narrower reach); *see also In re Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 643 (1978) (stating that courts interpreting a statute need not always apply its literal meaning where doing so "would lead to absurd results").

agents who fail to remit taxes that they collect."). Therefore, the contention that the IRS would be unable to provide a remedy is unconvincing.

Finally, Berera argues that our decision in *Mikulski* demonstrates the inapplicability of § 7422 to her claims. *See generally Mikulski*, 501 F.3d 555. In *Mikulski*, we held that § 7422 did not completely preempt claims for fraud and breach of contract. *Id.* at 565. However, the facts in *Mikulski* are distinguishable. The plaintiffs alleged that the defendant, a corporation whose shares they owned, intentionally misreported its taxable earnings to make itself appear more profitable. *Id.* at 558. Consequently, the plaintiffs paid more in taxes than they would have had to otherwise. *Id.* Whether the defendant intentionally misreported its taxable earnings turned on an interpretation of the federal tax code. *Id.* at 557–58. The court found no indication that Congress intended § 7422 "to be a security holder's exclusive remedy for a company's misreporting of dividends." *Id.* at 564 (citation omitted). Here, by contrast, § 7422(a) clearly shows Congress's intent to require parties asserting FICA refund claims to first file a claim with the IRS. Furthermore, noting that courts had broadened § 7422 in the airline cases, the court reasoned that such an "expansive application" did not apply because the defendant "did not collect or withhold any taxes." *Id.* at 564–65. Here, however, the Complaint indicates that Mesa excessively withheld FICA taxes. Accordingly, *Mikulski* is inapposite.

In sum, because Berera asserted a FICA refund claim, § 7422(a) required her to first file a claim with the IRS. But Berera failed to do so. Hence, the district court did not err in dismissing her Complaint.**[14]**

**C.     Removal**

The third, and final, fundamental question is whether Mesa timely filed its Notice of Removal. We hold that it did.

Berera contends that Mesa's Notice of Removal was untimely. To support this contention, Berera asserts that more than 30 days elapsed between Mesa's receipt of notice of the alleged federal nature of her claims and its September 11, 2013 filing of the Notice of Removal.

---

**[14]**We have carefully reviewed Berera's remaining arguments regarding federal question jurisdiction and the meaning of § 7422 and find them unpersuasive.

According to Berera, the August 9, 2013 letter shows that Mesa had notice of the alleged federal nature of her claims by August 8–9, 2013, which comes more than 30 days before September 11, 2013. Berera also suggests that Mesa had notice of the alleged federal nature of her claims as early as June 25, 2013—the date on which she originally filed the Complaint. Mesa responds that the Complaint failed to give it adequate notice of the federal nature of Berera's claims. Rather, Mesa maintains that it filed its Notice of Removal within 30 days after receiving "other papers" under 28 U.S.C. § 1446(b)(3) that first showed the federal nature of Berera's claims. Pertinently, one of these papers is the transcript of the August 30 hearing in which Berera conceded that the First Adjustment corresponded to Mesa's share of the FICA tax. Mesa also disputes Berera's interpretation of the August 9 letter.

A defendant removing an action to federal court must file a notice of removal. *Id.* § 1446(a). Generally, the defendant must file the notice of removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." *Id.* § 1446(b)(1). The 30-day period in § 1446(b)(1) starts to run only if the initial pleading contains "solid and unambiguous information that the case is removable." *Holston v. Carolina Freight Carriers Corp.*, No. 90-1358, 1991 WL 112809, at *3 (6th Cir. June 26, 1991) (per curiam). If the initial pleading lacks solid and unambiguous information that the case is removable, the defendant must file the notice of removal "within 30 days after receipt . . . of a copy of an amended pleading, motion, order or other paper" that contains solid and unambiguous information that the case is removable. *See* 28 U.S.C. § 1446(b)(3); *see also Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 950 (6th Cir. 2011). Section 1446(b)'s requirement of solid and unambiguous information is akin to actual notice. *Cf. Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 466 (6th Cir. 2002) (citation omitted) (internal quotation marks omitted) ("The intent of § 1446(b) is to make sure that a defendant has an opportunity . . . to remove upon being given notice in the course of the case that the right exists."); Charles Alan Wright et al., 14C *Federal Practice and Procedure* § 3731 (4th ed. 2009) ("The statute requires 'an amended pleading, motion, order, or other paper' to act as a trigger to commence the running of a new 30-day period once the defendant has received actual notice, through one of the documents described in Section 1446(b), that a previously unremovable case has become removable.").

Here, Mesa removed the case on September 11, 2013. Therefore, for Mesa's Notice of Removal to be timely, it must have received solid and unambiguous information that it could remove the case on or after August 12, 2013.

Berera's pleadings, per se, failed to solidly and unambiguously inform Mesa that it could remove the case. Berera filed the Complaint and Amended Complaint before August 12, 2013. But, as noted above, these pleadings were sparse and vague and asserted purported state-law claims. Hence, they lacked solid and unambiguous information that Berera was asserting a FICA refund claim.

Nor does the August 9 letter show that Mesa had solid and unambiguous information that it could remove the case by August 8–9, 2013. Therein, Mesa's counsel asserts that he spoke with Berera's counsel on August 8 to clarify the factual basis of Berera's claims. According to the letter, during this conversation, Berera's counsel stated that "Mesa might be able to identify the factual basis of the claim by reviewing company records of employee complaints to the IRS." R. at 303. Although this statement might have "led [Mesa] to conclude that the conduct at issue related to federal withholding matters," *id.*, it did not constitute solid and unambiguous information that the case was removable. Mesa was faced with a Complaint that (1) failed to use "federal" or any similar descriptor to describe the "payroll taxes and other taxes and withholdings" and (2) asserted purported state-law claims. Moreover, as of August 9, 2013, Berera had not confirmed Mesa's suspicion that the claims related to federal taxes. *See* R. at 87, 303. Therefore, the August 9 letter fails to show that Mesa had solid and unambiguous information that the case was removable on August 8 or 9.

Actually, the August 9 letter may support the district court's suggestion that Berera lacked solid and unambiguous information that the case was removable until August 13, 2013. Mesa's counsel stated in the letter that Mesa would assume that the Complaint contained at least one FICA claim unless Berera notified him otherwise by August 13. Setting this deadline was reasonable. On the one hand, Mesa's counsel had started to suspect that the case involved a FICA claim. Thus, due diligence required Mesa to take steps to confirm or dispel this suspicion. *Cf.* Wright et al., *supra*, § 3731. On the other hand, Berera deserved a reasonable amount of time

to respond to the August 9 letter. August 13 is after August 12, the date on or after which Mesa had to receive solid and unambiguous information that Berera was asserting a FICA claim.

The record lends even stronger support for the conclusion that Mesa lacked solid and unambiguous information about removability until August 30, 2013. For, on August 14, 2013, Berera's counsel wrote Mesa and stated that he disagreed with the "characterizations and assumptions contained within the [August 9] letter." R. at 87. Then, at the August 30 hearing, Berera's counsel conceded that the First Adjustment corresponded to Mesa's share of FICA taxes. The Complaint's artful allegations, coupled with this clarifying concession at a formal hearing, gave Mesa solid and unambiguous information that it could remove the case. August 30 falls well after the August 12 commencement of § 1446(b)(3)'s 30-day period.

The remaining issue is whether the August 9 letter, the August 30 hearing transcript, or both, are "other papers" under § 1446(b)(3). Because we hold that the hearing transcript is an "other paper" under § 1446(b)(3), we decline to decide whether the letter is as well.

We have yet to fully expound the meaning of "other paper" under § 1446(b)(3). One treatise states that this term is "expansive" and includes "a wide array of documents within its scope." Wright et al., *supra*, § 3731. Thus, as a general matter, "documents such as deposition transcripts, answers to interrogatories and requests for admissions, . . . amendments to ad damnum clauses of complaints, and correspondence between the parties and their attorneys or between the attorneys" may constitute "other papers" under § 1446(b)(3). *Id.* Consistent with these principles, we have held that "a plaintiff's responses to deposition questioning may constitute an 'other paper' under [§] 1446(b)." *Peters*, 285 F.3d at 466.

The term "other paper" under § 1446(b)(3) encompasses the hearing transcript at issue. As noted, courts have held that § 1446(b)(3) applies to similar court documents. We extend these holdings to the hearing transcript because it is (1) highly relevant to the issue of removability and (2) "involved in," not external to, "the case being removed." *See Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 969 (8th Cir. 2007). In so holding, we also give weight to

the fact that the transcript involves "oral statements made in the courtroom during the course of the action." Wright et al., *supra*, § 3731.[15]

For the foregoing reasons, the district court did not err in holding that Mesa timely filed its Notice of Removal.

## IV.    CONCLUSION

We held above that: (1) federal question jurisdiction existed because Berera pleaded a FICA refund claim; (2) Berera had to file a claim with the IRS before bringing her FICA refund action in federal court; and (3) Mesa's Notice of Removal was timely. Therefore, the district court did not err in denying Berera's Motion to Remand and dismissing the case. Consequently, we **AFFIRM**, as modified, the district court's judgment.

---

[15]Berera argues that the district court's conclusion that the Complaint failed to solidly and unambiguously inform Mesa of the federal nature of her claims is "inconsistent and contradictory" with its conclusion that the Complaint plainly asserted a FICA claim. But this argument oversimplifies the district court's reasoning. The district court relied on both the Complaint's plain allegations and Berera's counsel's concession during the August 30 hearing in holding that the Complaint asserted a FICA refund claim. R. at 686–87. Although the district court stated in its order dismissing the case that it did not have to rely on the hearing transcript to conclude that Berera asserted a FICA claim, R. at 709, it did not err in doing so under these circumstances. *See supra* n.7.