NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0431n.06

No. 16-3959

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 24, 2017
DEBORAH S. HUNT, Clerk

DAVID FUNDERWHITE,

     Plaintiff-Appellant,

v.

LOCAL 55, UNITED ASSOCIATION,
et al.,

     Defendants-Appellees.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

BEFORE:    GUY, CLAY, and WHITE, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff David Funderwhite sought a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, against Defendants Local 55, United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, et al. ("Local 55"), in connection with his termination from Local 55's apprenticeship program. Additionally, Funderwhite alleged state law breach of contract claims against Local 55. The district court dismissed the complaint for lack of subject matter jurisdiction. For the reasons set forth below, we **AFFIRM** the district court's judgment.

BACKGROUND

I.    Factual background

Funderwhite began his journeyman plumber apprenticeship with Local 55 on September 8, 2009. As a condition of enrollment, Funderwhite entered into an apprenticeship agreement

(the "Apprenticeship Agreement") whereby he agreed to abide by Local 55's written standards and policies. Under the terms of the Apprenticeship Agreement, an apprentice who accumulates a total of thirty disciplinary points or more during the course of his apprenticeship is subject to discharge from the program. Local 55's apprenticeship program is registered with the United States Department of Labor under the National Apprenticeship Act ("NAA"), 29 U.S.C. § 50, as a program approved by a state apprenticeship agency. The state agency responsible for overseeing the apprenticeship program is the Ohio State Apprenticeship Council ("OSAC").

On March 26, 2012, Funderwhite incurred twenty disciplinary points for falsification of information and failure to follow instructions. An additional three points were levied against him for failing his third-year drawing course. On March 13, 2014, Funderwhite accrued an additional disciplinary point for neglecting to make up lost class time. Finally, on June 11, 2014, Funderwhite incurred three additional disciplinary points for failing his fifth-year plumbing design and layout class. This brought his accumulated disciplinary point total to thirty-two.[1] As a consequence, Local 55 expelled Funderwhite from the apprenticeship program on June 13, 2014.

Funderwhite appealed his expulsion to Local 55's Joint Apprenticeship Training Committee. To this end, he appeared personally before the committee on August 6, 2014 to challenge the individual assessment of his disciplinary points. Specifically, Funderwhite contended that Local 55 either did not have sufficient grounds for assessing the points or that the assessment of points was not applied uniformly. Funderwhite received a letter dated August 11, 2014, informing him that the committee denied his appeal. Funderwhite appealed to OSAC. Pursuant to their independent investigation, OSAC affirmed Local 55's assessment of disciplinary points against Funderwhite and his discharge. During OSAC's review of

---

[1] The initial letter attached to the record indicates that Funderwhite was previously assessed five points, which Funderwhite does not seek to challenge.

Funderwhite's appeal, the agency cited one area of concern with respect to Local 55's record-keeping. OSAC recommended that Local 55 review and revamp its polices to ensure appropriate documentation.

## II. Procedural History

On March 10, 2016, Funderwhite filed a lawsuit in the United States District Court for the Northern District of Ohio. His complaint alleged three separate avenues of relief. In Count One, Funderwhite sought declaratory relief under 28 U.S.C. § 2201 and § 2202. Specifically, Funderwhite asserted that insufficient grounds existed for his expulsion; accordingly, Local 55's failure to preserve adequate records violated the federal policy underlying the NAA. Counts Two and Three alleged state law breach of contract claims relating to the Apprenticeship Agreement. Local 55 filed a motion to dismiss for lack of subject matter jurisdiction, contending that Funderwhite's complaint failed to raise a federal question. The district court agreed and dismissed the complaint on July 20, 2016, declining to take supplemental jurisdiction over the state law claims. On August 19, 2016, Funderwhite filed timely notice of appeal.

## DISCUSSION

## I. Standard of Review

Generally, this Court reviews *de novo* the district court's decision to dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1). *Cartwright v. Garner*, 751 F.3d 752, 760 (6th Cir. 2014). A motion to dismiss for lack of subject matter jurisdiction involves either a facial attack or a factual attack. *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co., Ltd.*, 807 F.3d 806, 810 (6th Cir. 2015) (citing *Am. Telecom Co., LLC v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007)). "When reviewing a facial attack, a district court takes the allegations in the complaint as true." *Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co.*,

491 F.3d 320, 330 (6th Cir. 2007). But when a Rule 12(b)(1) motion attacks a complaint's factual predicate, the court does not presume that the plaintiff's factual allegations are true. *Russell v. Lundergan–Grimes*, 784 F.3d 1037, 1045 (6th Cir. 2015). As always, the party invoking federal jurisdiction has the burden to prove the existence of that jurisdiction. *See id.*

## II.    Analysis

The Constitution gives Congress the exclusive power to determine a federal court's subject matter jurisdiction. U.S. Const. art. III, § 1; *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004). To that end, Congress has articulated two circumstances under which a federal court may exercise jurisdiction over a claim: (1) in civil actions between citizens of different states where the amount in controversy exceeds $ 75,000, called diversity jurisdiction; and (2) in civil actions "arising under the Constitution, laws, or treaties of the United States," referred to as federal question jurisdiction. *See* 28 U.S.C. §§ 1331–1332. Funderwhite never pled diversity jurisdiction, and therefore, we focus solely on whether his complaint raises a federal question.

Under federal question jurisdiction, a claim must arise under federal law. 28 U.S.C. § 1331. To determine whether federal question jurisdiction exists, we consider the "well-pleaded" allegations of the complaint. *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 357 (6th Cir. 2015). Generally, a suit "arises under" federal law "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]." *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (quoting *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152 (1908)). However, there are exceptions to the well-pleaded complaint rule. One exception is the artful-pleading doctrine: plaintiffs may not "avoid . . . jurisdiction by artfully casting their essentially federal law claims as state-law claims." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2 (1981) (internal citations and alterations omitted). A related exception is the "complete-

preemption doctrine," whereby "a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003).

Most relevant for purposes of this appeal is the substantial federal question doctrine. The Supreme Court "has . . . long recognized that [ ] jurisdiction will lie over some state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005); *see also Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 200 (1921). Such claims arise "where the vindication of a right under state law necessarily turn[s] on some construction of federal law," even though the complaint does not articulate a federal cause of action. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983). It should be noted that the mere presence of a federal issue in what is otherwise a state law claim does not automatically confer federal jurisdiction. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) ("[I]t takes more than a federal element to open the 'arising under' door.") (internal citations omitted). Such jurisdiction remains exceptional. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007). Put in other terms, the disputed question of federal law must be a "necessary element" of the state law claim, such that the state law claim is "*really* one of federal law." *Franchise Tax Bd.*, 463 U.S. at 13 (emphasis added and internal quotation marks omitted).

According to Funderwhite, Local 55 did not afford Funderwhite with the opportunity to contest twenty-seven of his thirty-two disciplinary points. Funderwhite asserts that under the federal regulatory scheme in place governing registered apprenticeship programs, he is entitled to certain due process protections as a member of such a registered program. Consequently, Funderwhite contends that his claims "arise under" federal law because this Court must

determine the scope of such purported rights by interpreting federal regulations expressed by the NAA. This Court disagrees, and holds that no basis exists for federal jurisdiction.

### a. Well-pleaded complaint

As a threshold matter, not one of Funderwhite's three alleged causes of action satisfies the well-pleaded complaint rule. With respect to his first claim, Funderwhite seeks declaratory relief pursuant to alleged violations of the NAA. In the declaratory-judgment context, the existence of federal jurisdiction is determined by reference to a hypothetical non-declaratory suit between the same parties. If a federal question appears in the complaint in this hypothetical suit, then federal jurisdiction would lie between the parties. *See Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 554 (6th Cir. 2012). But courts have long recognized that the operation of the Declaratory Judgment Act is procedural and does not extend the jurisdiction of the federal courts. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1960). Rather, the statute affords federal courts the ability to declare the rights of a party in a case without granting any other form of relief. Operating by itself, the Declaratory Judgment Act does not confer federal jurisdiction upon the courts. *See Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 902 (6th Cir. 2014) (the act does not provide "an independent basis for federal subject matter jurisdiction."). Therefore, a federal court "must have jurisdiction already under some other federal statute" before a plaintiff can invoke the Declaratory Judgment Act. *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007).

Funderwhite does not assert that the NAA functions as an independent basis for jurisdiction, and in any event, this Court has previously held that the NAA does not provide an enforcement mechanism to private litigants. *See Thomas v. Joint Apprenticeship Comm. of Plumbing & Pipefitting Indus., Local No. 225*, 823 F.2d 553, at *2–3 (6th Cir. 1987)

(unpublished) (finding that in light of the NAA's explicit grant of enforcement authority to the Secretary of Labor, no private cause of action can be implied). Insofar as the underlying basis for relief is the NAA, this Court cannot exercise jurisdiction because a hypothetical litigant cannot state a cognizable claim under the NAA. And because Funderwhite fails to provide a federal cause of action which may serve as a basis for declaratory relief, his first claim does not satisfy the well-pleaded complaint rule.

With respect to his second and third claims, Funderwhite again fails to satisfy the well-pleaded complaint rule. On its face, neither Funderwhite's breach of contract claim nor his breach of implied contract claim arises under the United States Constitution or a federal statute. Funderwhite does not dispute this fact; instead, he contends that the substantial federal question doctrine applies in the instant action.

### b. Substantial Federal Question

Funderwhite argues that this Court has subject matter jurisdiction over his case because his state law breach of contract claims contain an embedded federal question, making federal court the appropriate forum to resolve his dispute with Local 55. The basis for his belief is less than clear. Funderwhite repeatedly references the NAA and states that the NAA contains certain provisions and policies that ensure "due process" protections for apprentices. However, as we have previously stated, he lacks standing to challenge violations of the NAA. Therefore, his claim is either that: (1) his apprenticeship agreement does not contain those protections, but should; or (2) that his apprenticeship agreement incorporates by reference certain protections of the NAA, the scope of which must be determined by a court before ruling upon his breach of contract claim. We need not go any further in discerning Funderwhite's precise argument because any construction of his claim fails to raise a substantial federal question.

This Court has established a three-part test for determining whether a state law claim involves a substantial federal question: "(1) the state law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities." *Mikulski*, 501 F.3d at 568 (citing *Grable,* 545 U.S. at 314). Upon reviewing these factors, we are convinced that the exercise of federal jurisdiction is inappropriate in the instant case.

### i.  Disputed federal issue

With respect to the first factor, this Court made clear in *Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 589 (6th Cir. 2013), that in order for a litigant to implicate federal jurisdiction there needs to be an *actual* dispute over a federal issue by both parties. In order to do so, the parties must "cross swords over" a federal issue such that two competing interpretations are asserted. *Mikulski*, 501 F.3d at 569 (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 512 (2006)). Given Funderwhite's ever-changing framing of his argument, it is difficult for us to ascertain the precise nature of the federal dispute at issue in this case. But because the existence of a disputed federal issue is not a dispositive factor in the *Mikulski* test, we assume without deciding that Funderwhite has met this prong of the test. *See id.* at 569–70 (concluding that there was no basis for subject matter jurisdiction even though plaintiffs presented the court with a federal issue that was disputed). Even assuming that this component is satisfied, we decline to assert jurisdiction because neither of the two remaining factors of *Mikulski* test have been satisfied.

### ii. Nature of the federal interest

Under the second factor expressed by *Mikulski*, in order to give rise to subject matter jurisdiction the issue must be of substantial federal interest. There are four aspects of a case that affect the substantiality of the federal issue:

> (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

*Mikulski*, 501 F.3d at 570. "While certain of these factors may be more applicable than others in any given set of circumstances, no single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in a given case." *Id.*

Funderwhite argues that the federal interest is substantial because the "entire framework of the National Apprenticeship Act stems from a congressional declaration that regulation of apprenticeship programs at the federal level is 'necessary to safeguard the welfare of apprentices.'" (Appellant Br., pg. 36) (quoting 29 U.S.C. § 50). This Court disagrees as the factors all cut against jurisdiction.

The first factor weighs against characterizing the federal interest as substantial because there is no federal agency involvement. The agency responsible for overseeing the apprenticeship program operated by Local 55 is not a federal agency but the Ohio State Apprenticeship Council. It regulates and monitors all Ohio apprenticeship programs to ensure compliance with both Ohio law and federal law. OSAC has the power to punish a non-compliant apprenticeship program, and any remedy for such a violation would take the form of an enforcement action by OSAC, ultimately resulting in the de-registration of Local 55's apprenticeship program.

The second factor is more subjective, but nonetheless, cuts against Funderwhite. In its consideration, this Court must determine whether the federal question "implicate[s] any broader or more substantial issue." *Mikulski*, 501 F.3d at 571. Even assuming that the NAA gives rise to due process rights, it is unclear how answering the specific question of whether breach of the Apprenticeship Agreement by Local 55 implicates such due process concerns, requires resolution of any broader or more substantial federal issue. Although Funderwhite claims that the entire framework of the NAA stems from a congressional declaration that apprentice rights should be protected, the responsibility for enforcement of such rights has been assigned to the Secretary of Labor and not to individual plaintiffs. Consequently, our resolution of this case should be narrow and confined to the factual circumstances giving rise to the dispute.

The third factor—whether resolution of the federal question is dispositive of this case— also cuts against Funderwhite. Assuming that the Court finds that the NAA imbues Funderwhite with certain procedural protections, the Court would still need to determine whether the process in place was somehow insufficient. And even if the process in place was insufficient, the real gravamen of Funderwhite's dispute is that Local 55 improperly assessed the disciplinary points against him. Under such circumstances, a federal court would still be required to engage in fact-finding to resolve whether Funderwhite should be reinstated to the program.

The fourth factor also weighs against Funderwhite. Foremost, given the amorphous nature of his claims, it is impossible to say that a decision in this case would provide any meaningful precedent. The issues appear limited to the specific factual circumstances surrounding Funderwhite's expulsion from the apprenticeship program. Consequently, the totality of these factors suggests that no substantial federal issue is implicated in this dispute.

### iii. Congressionally approved balance

The last factor to be considered is whether a federal court's exercise of jurisdiction disturbs any congressionally approved balance of federal and state judicial responsibilities. Courts have denied subject matter jurisdiction when the grant of jurisdiction would greatly expand the number of cases brought before federal courts. *See Grable*, 545 U.S. at 314–15 ("But even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts."). Congress's decision not to grant individual apprentices the right to sue in order to enforce provisions of the NAA militates against recognizing jurisdiction in this case. If Congress desired apprentices to have the ability to bring suits under the NAA, it could have elected to grant them such a right. Allowing Funderwhite to reframe his NAA argument as a breach of contract claim under federal jurisdiction would undermine the enforcement framework created by the federal statute. And by recognizing such a claim in the instant case, this Court would open the door for every disgruntled apprentice to seek relief in federal court. This appears contrary to the congressional intent underlying the NAA. Accordingly, we see no basis for a federal court to exercise jurisdiction in this dispute.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's decision to dismiss the case based on lack of subject matter jurisdiction.