NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0486n.06
No. 19-1056

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| STEPHEN NICHOLS, | ) | **FILED** |
|  | ) | Aug 18, 2020 |
| Plaintiffs-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) |  |
|  | ) | ON APPEAL FROM THE |
| WAYNE COUNTY, MICHIGAN; WAYNE | ) | UNITED STATES DISTRICT |
| COUNTY, MICHIGAN PROSECUTOR'S | ) | COURT FOR THE EASTERN |
| OFFICE; CITY OF LINCOLN PARK, MICHIGAN; | ) | DISTRICT OF MICHIGAN |
| KYM L. WORTHY, | ) |  |
|  | ) |  |
| Defendants-Appellees. | ) |  |
|  | ) |  |

Before: MOORE, McKEAGUE, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. A police officer seized Stephen Nichols' car for its suspected involvement in a violation of Michigan's Identity Theft Protection Act. The car was detained in anticipation of civil forfeiture, but the prosecutor never instituted forfeiture proceedings. Nichols eventually got his car back after he filed an action against several local government entities, asserting, as relevant here, *Monell* liability under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). With his car returned to him, Nichols sought damages for the local governments' alleged failure to provide him with constitutional process. Specifically, he claimed that the Due Process Clause entitled him to an intervening hearing (after the seizure, but before any forfeiture hearing) at which he could have challenged the post-seizure detention of his car prior to and during any forfeiture proceedings. The district court disagreed and dismissed his

complaint for failure to state a claim. We affirm because Nichols has failed to allege a municipal "policy or custom" sufficient to state a *Monell* claim under § 1983.

I.

Nichols' car was seized under Michigan's Identity Theft Protection Act (MITPA). Mich. Comp. Laws (MCL) §§ 445.61–.79d. MITPA prohibits the "use or [the] attempt to use the personal identifying information of another person" to "[o]btain credit, goods, services, money, property, a vital record, a confidential telephone record, medical records or information, or employment," or to "[c]ommit another unlawful act." MCL § 445.65(1). Any personal property "used, possessed, or acquired in a felony violation of [MITPA]" is subject to forfeiture. MCL § 445.79(1)(a).

The statute authorizes the state or a local government to seize forfeitable property either "upon process issued by the circuit court having jurisdiction over the property" or "without process" if, among other circumstances, there is probable cause to believe that the property "was used or is intended to be used in violation of [MITPA]." MCL § 445.79a. If the government seizes property without process and the property's total value "does not exceed $50,000.00," the government "shall notify the owner" of the seizure and of its intent to forfeit the property. MCL § 445.79b(1). If the owner does not contest the forfeiture within 20 days after receiving the notice, the local government "shall declare the property forfeited." MCL § 445.79b(1)(d).

If the owner contests the forfeiture, he may "file a written claim" and post a bond with the government within 20 days "after receipt of the notice." MCL § 445.79b(1)(c). That claim and bond are then "transmit[ted]" to the government's "prosecuting attorney." *Id.* The prosecuting attorney then "shall promptly institute forfeiture proceedings after the expiration of the 20-day

period." *Id.* Owners may seek to recover their seized property via "an order and judgment of the court having jurisdiction over the forfeiture proceedings." MCL § 445.79b(2).

## II.

According to the allegations in Nichols' complaint, the events at issue here began when a City of Lincoln Park police officer asked Nichols for proof of auto insurance as part of a traffic stop. When the officer determined that the provided insurance certificate was invalid, he seized Nichols' car and gave him a notice form indicating that the car was subject to forfeiture under MITPA. The form explained that to contest the forfeiture Nichols would need to file a "claim of interest" with Lincoln Park and post a $250 bond with the Wayne County Prosecutor's Office. Nichols did so. Nichols was not charged with any criminal offense. Instead, he pleaded responsible in state court to the civil infraction of operating a motor vehicle without proof of insurance.

Under MITPA, the Wayne County Prosecutor's Office was required to "promptly institute forfeiture proceedings." MCL § 445.79b(1)(c). Yet, nearly three years later, the county had not done so, and Nichols' car had not been returned.[1] So Nichols filed a putative class action[2] in federal court, suing the City of Lincoln Park and Wayne County (the municipalities) under 42

---

[1] On the record before us, it is unclear why this happened. Wayne County's motion to dismiss attached an email between the county prosecutor's office and Nichols' attorney indicating that, at some point, the assistant prosecutor assigned to Nichols' case had decided not to pursue the forfeiture of Nichols' car but had "overlooked sending that correspondence" to the Lincoln Park Police Department. The email also indicated that the prosecutor's office had set up two meetings with Nichols' attorney, but the attorney failed to appear both times. But because these facts do not appear in the complaint, we do not consider them at the motion to dismiss stage. *See Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 358 n.7 (6th Cir. 2015) ("Generally, when ruling on a Rule 12(b)(6) motion to dismiss, courts may not consider information outside the complaint." (citing Fed. R. Civ. P. 12(d))).

[2] The complaint also named Adam and Ryan Chappell as plaintiffs, but they voluntarily dismissed their claims before any responsive pleadings were filed.

U.S.C. § 1983.[3]  He alleged that the municipalities had violated his and all similarly situated persons' due process rights through their "practice, custom, policy, and pattern of failing to provide prompt post-seizure, pre-forfeiture hearings in front of a neutral decision-maker."  He sought damages as well as declaratory and injunctive relief.

Upon receiving notice of the lawsuit, Wayne County released Nichols' car to him, prompting Nichols to later voluntarily dismiss his claims for declaratory and injunctive relief.  The county sought to have the damages claim dismissed as well, on the ground that Nichols had failed to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The county argued that state law dictated the scope of the county's forfeiture proceedings and that the county could not, therefore, be held liable for failing to provide a pre-forfeiture-proceeding hearing.  In the alternative, the county argued that MITPA's "promptness" requirement satisfied due process.

The district court granted the motion to dismiss.  Although it found that the municipalities do "not routinely provide post-deprivation, pre-forfeiture hearings for civil seizures," it concluded that the failure to provide such "an additional hearing d[id] not violate due process."  The district court therefore dismissed Nichols' complaint for failure to state a claim.

Nichols timely appealed.

### III.

We review de novo a district court's ruling on a Rule 12(b)(6) motion.  *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017).  When performing that review, we generally consider only the

---

[3] In addition to Lincoln Park and Wayne County, Nichols sued the Wayne County Prosecutor's Office and Kym Worthy in her official capacity as the Wayne County Prosecutor. The last two, along with Wayne County itself, constitute a single, county entity for § 1983 purposes. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Nichols also sued Kym Worthy in her individual capacity but voluntarily dismissed that claim prior to the district court's ruling.

facts alleged in the complaint. *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 358 n.7 (6th Cir. 2015). We accept those allegations as true and consider any ambiguity in them in the light most favorable to the plaintiff, drawing all reasonable inferences in his favor. *Kaminski*, 865 F.3d at 344. But "[l]egal conclusions couched as factual allegations need not be accepted as true." *Buddenberg v. Weisdack*, 939 F.3d 732, 738 (6th Cir. 2019) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, therefore, Nichols "must allege facts that if accepted as true, are sufficient to state a claim to relief that is plausible on its face," *Majestic Bldg. Maint., Inc. v. Huntington Bancshares, Inc.*, 864 F.3d 455, 458 (6th Cir. 2017) (citing *Twombly*, 550 U.S. at 555), and "are sufficient to 'raise a right to relief above the speculative level,'" *Rayfield v. City of Grand Rapids*, 768 F. App'x 495, 501 (6th Cir. 2019) (quoting *Wesley v. Campbell*, 779 F.3d 421, 427 (6th Cir. 2015)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bailey v. City of Ann Arbor*, 860 F.3d 382, 388 (6th Cir. 2017) (explaining that "the plausibility standard of *Twombly* and *Iqbal*" applies to *Monell* claims); *Rayfield*, 768 F. App'x at 500–01 (applying the plausibility standard to a *Monell* claim).

IV.

To state a municipal-liability claim under § 1983, the plaintiff must allege the deprivation (1) of a right secured by the Constitution or laws of the United States, (2) that was directly caused by a municipal policy or custom. *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017).

Nichols does not seek damages from any individual actor for his role in the seizure and detention of his car.[4] Instead, he has sued only the city and the county for depriving him of due

---

[4] It is an open question in this circuit "whether a municipality's liability under § 1983 is predicated on first finding that an individual officer or employee is also liable." *Rayfield*, 768 F. App'x at 511 n.12 (noting conflicts in our caselaw). We need not resolve this question here

process by failing to provide a continued-detention hearing.[5] But to prevail in a § 1983 suit against municipal defendants, Nichols must still allege, and ultimately prove, a constitutional violation: "if the plaintiff has suffered no constitutional injury, his *Monell* claim fails." *North v. Cuyahoga County*, 754 F. App'x 380, 389 (6th Cir. 2018) (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) (per curiam)). Here, Nichols alleges that he was unconstitutionally deprived of a property interest—the possessory interest in his vehicle from the time of its seizure until its eventual return—without adequate process. To hold the municipalities liable under *Monell*, he must also allege, and ultimately prove, that the *municipalities* themselves, as opposed to any municipal employee, were responsible for the prolonged detention of his vehicle without process. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). ("A municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" (quoting *Monell*, 436 U.S. at 694)).

---

because we ultimately conclude that Nichols fails to state a claim under Rule 12(b)(6) on other grounds. We do note our confusion, however, at the ire this brief footnote draws from our dissenting colleague. *Rayfield* ably documented "our unsettled precedent on this issue," *id.*, and though the dissent strives to untangle our caselaw, we reiterate that we are not resolving the question here.

[5] Nichols' complaint appears to seek damages for the prolonged detention of his car, specifically for the "unnecessary depriv[ation] of the use of his vehicle, the opportunity to perform necessary maintenance on it," for the cost of "insurance for a vehicle that he can't use," and the cost in time and money he was "forced to pay for rides, . . . taxis[,] and inconvenient public transit to get to and from work and perform daily necessities of life." But he did not allege causation— that the municipalities' failure to provide an additional hearing caused the prolonged detention of his car and the attendant harms. To establish causation, he would have had to allege that he would have prevailed at an intervening hearing if it had been offered, i.e., that the city would have returned his car earlier. Although Nichols makes that argument on appeal, he does so for the first time. Despite that missing allegation, he might still be entitled to nominal damages for a violation of his due process rights. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978) (holding that "the denial of procedural due process [is] actionable for nominal damages without proof of actual injury"). We need not explore the damages question further, however, because Nichols' complaint is otherwise deficient.

*Constitutional Violation.* The Fourteenth Amendment's Due Process Clause prohibits states from "depriv[ing] any person of . . . property, without due process of law." U.S. Const. amend. XIV, § 1. When state or local governments attempt to deprive an individual of his property, the Due Process Clause guarantees him an "opportunity to be heard" in "some form of hearing" "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Just when a hearing must be held to satisfy the "meaningful time" requirement varies depending on the kind of property the government seeks to seize. Although due process generally requires "predeprivation notice and hearing," in some "extraordinary situations," a "valid governmental interest . . . justifies postponing the hearing until after the event." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972)). Those extraordinary situations include government seizure of forfeitable property that "could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given." *Id.* at 52 (quoting *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679 (1974)). So, for example, "[t]he seizure of a home" or other real property requires a pre-deprivation hearing, *see id.* at 54, 61–62, but the seizure of a vehicle does not, *see Ross v. Duggan*, 402 F.3d 575, 583–84 (6th Cir. 2004) (ruling that "pre-seizure hearings are not constitutionally mandated" for cars because they are "mobile property" (emphasis omitted)).

Seizing property that falls into this "mobile property" exception does not let the government off the due-process hook, however. The government must still provide the owner with "notice and a timely post-seizure [hearing] prior to forfeiture." *Ross*, 402 F.3d at 584 (emphasis omitted) (citing *United States v. Von Neumann*, 474 U.S. 242, 249–50 (1986)). Ordinarily, a forfeiture hearing *is* the post-deprivation process. *See James Daniel Good*, 510 U.S.

at 52–53; *Von Neumann*, 474 U.S. at 249–50; *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 562 (1983).  Nichols argues, however, that when the property seized is a car—as opposed to, say, cash or other personal property—due process demands something more.  Relying on *Krimstock v. Kelly*, 306 F.3d 40, 68 (2d Cir. 2002), Nichols claims entitlement to a "continued detention hearing," which would have allowed him to "dispute the detention of [his] vehicle[] while forfeiture litigation [is] being contemplated or carried out."  Appellant Br. at 10, 15.  Such a hearing, Nichols argues, is necessary to protect his present possessory interest in his vehicle during the time between seizure and forfeiture.  In essence, he seeks something akin to a *Gerstein* hearing or a bail hearing for his car.  *See Gerstein v. Pugh*, 420 U.S. 103 (1975); *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991).

Nichols vacillates regarding the form he envisions for such a hearing.  At times he insists that a continued-detention hearing is different than a quickly filed or "prompt" forfeiture hearing under MITPA;[6] it must be an *additional* hearing, between the seizure and the forfeiture hearing.  On this theory, the municipalities' alleged shortcoming is their failure to supplement MITPA's procedures by setting up a scheme for holding an additional, interim hearing.

At other times, however, Nichols retreats from this position, conceding that the municipalities could satisfy the Constitution through the MITPA process itself.  In the district court, Nichols claimed that MITPA forfeiture proceedings were inadequate because they were not

---

[6] The use of the word "prompt" may have occasioned some of the confusion in this case. That term is used in MITPA, which requires that a prosecuting attorney "shall promptly institute forfeiture proceedings after the expiration of the 20-day period" mentioned in the notice.  MCL § 445.79b(1)(c).  But the demands of due process are not defined by state law; the Constitution may require more, or less, than a state statute.  *See Rudolph v. Lloyd*, 807 F. App'x 450, 454 (6th Cir. 2020) (explaining that "the minimum level of process required" is "a question of federal constitutional law" (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 315 (6th Cir. 2006))).  We are concerned here with a constitutional question alone.  When we refer to forfeiture proceedings being (or not being) initiated promptly, we use that term in its constitutional sense.

"typically" filed quickly enough. In his brief before this court, Nichols argues that the municipalities could fulfill the putative constitutional requirement of a "continued-detention hearing by making it a policy to institute forfeiture actions for vehicles no later than 7 days after the 20-day notice period ends." Appellant Br. at 48. At oral argument, he went further, conceding that a forfeiture proceeding initiated within 30 days after the 20-day period (that is, 50 days after a property owner receives notice) would likewise satisfy due process. By Nichols' own lights, then, a quickly filed forfeiture hearing under MITPA can satisfy due process. That concession matters. Nichols, of course, has no right to elect the *means* by which the municipalities satisfy the Constitution. If a quickly filed forfeiture hearing can satisfy due process, as Nichols admits, then the only constitutional question remaining is, how quick would be quick enough?[7]

We need not answer that constitutional question, however, because Nichols has failed to show that the *municipalities*, as opposed to the unnamed county prosecutor who failed to institute forfeiture proceedings in his case, worked to deprive him of it. That is, he has not alleged "deliberate conduct," "properly attributable to the municipality," that is the "moving force" behind the alleged constitutional violation. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (emphasis omitted).

*Policy or Custom.* In *Monroe v. Pape*, the Supreme Court held that municipalities were not subject to liability under § 1983. 365 U.S. 167, 187 (1961). *Monell* reversed that decision, holding that "Congress intended potential § 1983 liability where a municipality's *own* violations were at issue but not where only the violations of *others* were at issue. The 'policy or custom' requirement rests upon that distinction and embodies it in law." *Los Angeles County v. Humphries*,

---

[7] We do not know the outer boundaries of Nichols' position, as the court redirected its line of questioning, once learning that, at a minimum, Nichols viewed a forfeiture proceeding filed 50 days after notice as satisfying due process.

562 US 29, 37 (2010).  It ensures that "'municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers."  *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion)).

At the pleading stage, Nichols may establish that the municipalities have "such a policy or custom" by alleging facts that show "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations."  *Burgess*, 735 F.3d at 478.

Nichols has raised only one purported custom or policy for our review—the municipalities' failure to provide a continued-detention hearing, which he concedes could take the form of a sufficiently speedy forfeiture proceeding.  But he cannot avail himself of the first two *Burgess* categories.  He points to no "official policy or legislative enactment," *id.*, instructing prosecutors to drag their feet in instituting MITPA forfeiture hearings.  Nor does he aver "that an official with final decision making authority ratified" or made a decision not to initiate proceedings quickly.[8] *Id.*  Accordingly, he must rest solely on the last two categories: "the existence of a policy of inadequate training or supervision" or, perhaps, "the existence of a custom of tolerance or acquiescence of federal rights violations."  *Id.*  We address these arguments in turn.

*Failure to Train*.  We begin with Nichols' allegation that the county prosecutor "failed to train and supervise attorneys acting for the defendants in the need to . . . provide for prompt

_____

[8] Although the complaint names Wayne County Prosecutor, Kym Worthy, as "the final policy maker for the municipal Defendants" and claims she is "responsible for this unconstitutional practice, custom, policy and pattern," such "threadbare recitals" do not suffice.  *Iqbal*, 556 U.S. at 678.  The only factual allegation Nichols makes with respect to Worthy's conduct concerns the failure-to-train claim, which we address below.

post-seizure, pre-forfeiture hearings in front of neutral decision maker." This allegation fails to state a claim. When a plaintiff attempts to establish municipal liability based on a "failure to train employees," he must show the municipality's "deliberate indifference to constitutional rights." *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994 (6th Cir. 2017) (citing *City of Canton*, 489 U.S. at 388). But "a municipal policymaker cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established." *Id.* (quoting *Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505, 511 (6th Cir. 2012)).[9] Nichols has not directed us to any "Supreme Court or Sixth Circuit case that" establishes his right to the initiation of forfeiture proceedings within 50 days of notice, or indeed within any particular time frame. *See id.* at 993. He refers us only to two out-of-circuit decisions, which is alone insufficient to "clearly establish" a constitutional right. *Id.*; s*ee also Rayfield,* 768 F. App'x at 512. Moreover, one of those decisions has been vacated by the Supreme Court, *Smith v. City of Chicago*, 524 F.3d 834, 835 (7th Cir. 2008), *vacated and remanded sub nom. Alvarez v. Smith*, 558 U.S. 87 (2009), and the other gave no specifics on timing, requiring only that "claimants be given a prompt post-seizure retention hearing," while leaving "the details of . . . implementation . . . to the experience of the district court and the knowledge of the parties." *Krimstock*, 306 F.3d at 68–69. Rather than point us to any clearly established time frame within which post-seizure hearings must be initiated, Nichols asks us to draw that line for the first time in his case. That is fatal to his failure-to-train claim. *Arrington-Bey*, 858 F.3d at 995.

*Failure to institute constitutionally prompt forfeiture proceedings.* We can also readily dispatch Nichols' related claim that the municipalities have a custom or policy of failing to

---

[9] Before this court, Nichols does not dispute that, to the extent his complaint alleges a failure-to-train theory, his is the type of case to which the "clearly established" rule from *Arrington-Bey* applies. *See* Appellant Br. at 50–51; Reply Br. at 23.

promptly institute the forfeiture proceedings provided for under MITPA. As he now explains it, municipalities may satisfy the Constitution either by holding a continued-detention hearing, separate and apart from any forfeiture proceeding, or by instituting a forfeiture proceeding quickly enough under MITPA (within 50 days of notice). But because Nichols is not entitled to elect his preferred procedures, he can adequately state a constitutional claim only if he alleges *both* that the municipalities have a custom or policy of failing to provide a stand-alone continued-detention hearing and that the municipalities have a custom or policy of failing to initiate constitutionally-timely MITPA forfeiture proceedings. Yet Nichols' only allegation about the timing of forfeiture proceedings is that "[i]t can take months, or even years, for the [municipalities] to initiate a case in state court seeking forfeiture of the vehicle." The mere assertion that it *can* take months or years to initiate a forfeiture proceeding does not allege a "policy or custom" to that effect. He points neither to an "official policy or legislative enactment," *Burgess*, 735 F.3d at 478, nor to a "well settled" "course of action deliberately chosen from among various alternatives," *Doe v. Claiborne County*, 103 F.3d 495, 507–08 (6th Cir. 1996) (quoting *Monell*, 436 U.S. at 691). In short, he has failed to allege a "custom or policy" that would show that his "injury ar[ose] directly from a municipal act." *Arrington-Bey*, 858 F.3d at 994.

The most that could be said for Nichols' complaint in this regard is that it "relies on the *absence* of a policy" that would require county prosecutors to more quickly initiate forfeiture proceedings. *Id.* at 995. But, as in *Arrington-Bey,* that is just another way of saying that the municipalities failed to train the prosecutors to bring forfeiture hearings within the putative 50-day window. *See id.*; *see also City of Canton*, 489 U.S. at 386 n.5 (noting that respondent's allegation that "city had a 'custom' of denying medical care . . . appears to be little more than a restatement of her 'failure-to-train as policy' claim"). "With such a claim, [Nichols] must show that the

-12-

allegedly violated right was clearly established.  And for the reasons noted earlier, [he] cannot do so."  *Arrington-Bey*, 858 F.3d at 995.

\* \* \*

Nichols has failed to state any claim on which relief can be granted.  We therefore AFFIRM the district court's dismissal of Nichols' complaint.

McKEAGUE, Circuit Judge, concurring. I join the majority opinion in full. I write separately because I conclude that even if there were no *Monell* problem here, Nichols would still lose on the merits. Nichols asks us to apply the *Mathews* factors to determine whether the municipalities were constitutionally required to provide a continued-detention hearing before the ultimate forfeiture proceedings. *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). [Appellant Br. at 18–25.] The Second Circuit applied those factors in *Krimstock v. Kelly* and held that due process required New York City to afford plaintiffs "a prompt post-seizure, pre-judgment hearing" "to test the probable validity of the City's deprivation of their vehicles *pendente lite*, including probable cause for the initial warrantless seizure." 306 F.3d 40, 67, 70 (2d Cir. 2002). On the other side, the municipalities argue, and the district court found, that this continued-detention hearing was not constitutionally required under the Supreme Court's decision in *United States v. Von Neumann*, 474 U.S. 242 (1986). [Lincoln Park Br. at 12–15; Wayne County Br. at 22; R. 11, PID 135.] I think the municipalities have the better argument. Under *Von Neumann*, the municipalities do not need to provide a continued-detention hearing because that hearing is not necessary to a timely forfeiture proceeding.

To understand *Von Neumann*, we first need to consider the Court's earlier opinion in *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555 (1983). There, Customs officials at the Los Angeles airport seized $8,850 from the plaintiff, who had declared that she was not carrying more than $5,000. *Id.* at 558–59. Customs informed the plaintiff that she could file a "petition for remission or mitigation,"[1] which she did a week later, in

---

[1] Petitions for remission or mitigation are requests for executive officials to exercise their discretion and remit or mitigate fines, penalties, or forfeitures, or to discontinue prosecution. *See* 19 U.S.C. § 1618. The executive official must first make a finding that the penalty or forfeiture was "incurred without willful negligence or without any intention on the part of the petitioner to

September 1975. *Id.* While her petition was still pending, the Customs agent investigated and eventually recommended criminal proceedings against the plaintiff. *Id.* at 560. The case went to trial, which ended in December 1976, when the plaintiff was convicted on one count and acquitted on the other. *Id.* Then in March 1977, after an inquiry from the plaintiff's lawyer, Customs notified her that a forfeiture claim "had been referred to the U.S. Attorney." *Id.* at 560. Finally, two weeks later, the government filed a complaint seeking forfeiture in federal district court. *Id.* The plaintiff claimed that the government's "dilatory" processing of her petition and initiation of the suit violated her due-process rights. *Id.* at 561. The Supreme Court disagreed.

The Court explained that "[u]nlike the situation where due process requires a prior hearing, there is no obvious bright line dictating when a post-seizure hearing must occur." *Id.* at 562. Instead, the Court analogized the forfeiture process "to a defendant's right to a speedy trial once an indictment or other formal process has issued." *Id.* at 564. Accordingly, it applied the speedy-trial factors from *Barker v. Wingo*, 407 U.S. 514 (1972), which consider, on a case-by-case basis, the "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *$8,850*, 461 U.S. at 564.[2] Applying those factors, the Court determined that, under the circumstances present there, the "Government's delay in instituting civil forfeiture proceedings was reasonable." *Id.* at 569.

A few years later, the Court decided the case of *United States v. Von Neumann*. 474 U.S. 242. Like *$8,850*, *Von Neumann* addressed the seizure of property by Customs officials. There, as here, government authorities seized the plaintiff's car. *Von Neumann*, 474 U.S. at 245. More

---

defraud the revenue or to violate the law" or of such "mitigating circumstances as to justify the remission or mitigation." *Id.*

[2] To be clear, Nichols is not arguing that the delay in initiating forfeiture proceedings in his case was unlawful under the framework announced in *$8,850*. Rather, under Nichols' theory, the due process problem stemmed from the lack of a continued-detention hearing.

specifically, Von Neumann tried to bring a newly purchased car into the United States without declaring it, and Customs seized the car. *Id.* Like the plaintiff in *$8,850*, Von Neumann filed a petition for remission and mitigation. *Id.* He then posted bond for the total value of the car—$24,500—and Customs officials released the car to him. *Id.* at 245–46. Thirty-six days after the seizure, the Secretary of the Treasury notified Von Neumann that the penalty for his failure to declare had been mitigated to $3,600. *Id.* at 246. Von Neumann argued that the thirty-six-day delay violated his due process rights. *Id.* at 246–247.

The Supreme Court disagreed. Von Neumann argued that "his property interest in his car g[a]ve[] him a constitutional right to a speedy disposition of his remission petition without awaiting a forfeiture proceeding." *Id.* at 249. The Court rejected this argument, explaining that "[i]mplicit in this Court's discussion of timeliness in *$8,850* was the view that the forfeiture proceeding, *without more*, provides the postseizure hearing required by due process to protect Von Neumann's property interest in the car." *Id.* at 249 (emphasis added). It concluded by noting that "remission proceedings are not *necessary* to a forfeiture determination, and therefore are not constitutionally required. Thus there is no constitutional basis for a claim that [Von Neumann's] interest in the car, or in the money put up to secure the bond, entitles him to a speedy answer to his remission petition." *Id.* at 250.

Taking these cases together, here's where the law stands. When property has been seized without a pre-seizure hearing, the owner of the property is entitled to a post-seizure hearing. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). The government must timely initiate that post-seizure hearing, and timeliness is measured on a case-by-case basis via the speedy-trial test. *$8,850*, 461 U.S. at 565; *Von Neumann*, 474 U.S. at 251. Finally, due process's post-seizure requirement is satisfied by a timely "forfeiture proceeding[] without more." *Von*

*Neumann*, 474 U.S. at 249–51. Anything more than a timely forfeiture proceeding is "not constitutionally required." *Id.* at 250.

Nichols disagrees with this framework and argues that, at least when it comes to cars, the Due Process Clause requires a continued-detention hearing, where a claimant can challenge the government's retention of the car prior to the ultimate forfeiture judgment. He relies primarily on *Krimstock*. There the Second Circuit reviewed a New York City ordinance that permitted police to seize, as "instrumentalit[ies]" of the crime, the cars of those accused of drunk driving or other crimes. *Krimstock*, 306 F.3d at 43–44. The plaintiffs did not challenge either the seizures or the forfeiture proceedings; they challenged only their inability to "promptly" challenge the "legitimacy of and justification for the City's retention of the vehicles prior to judgment in any civil forfeiture proceeding." *Id.* at 44. The court agreed with the plaintiffs, holding that the Due Process Clause entitled vehicle owners to an additional hearing "promptly after their vehicles are seized" in which they could "challenge the City's continued possession of his or her vehicle during the pendency of [forfeiture] proceedings." *Id.* at 44, 70.

*Krimstock*, in a footnote, offered three grounds on which to distinguish *Von Neumann*: (1) *Von Neumann* was reviewing the timeliness of a remission petition under the customs laws, not the failure to provide a continued-detention hearing; (2) the plaintiff in *Von Neumann* could have filed a Rule 41(g) motion[3] under the Federal Rules of Criminal Procedure to challenge the seizure and retention of the vehicle; (3) Customs released Von Neumann's car on bond. 306 F.3d at 52 n.12. The dissent adopts this same analysis, arguing that Von Neumann's

---

[3] *Von Neumann* and *Krimstock* refer to Rule 41(e), but "[i]n 2002, this subsection was redesignated Rule 41(g) without substantive change." *Brown v. United States*, 692 F.3d 550, 552 (6th Cir. 2012) (quoting *De Almeida v. United States*, 459 F.3d 377, 380 n.2 (2d Cir. 2006)). For clarity, I'll refer to the rule throughout as Rule 41(g).

interest in a timely remission petition is different from Nichols' interest in using his car before the ultimate forfeiture action. Nichols attempts to distinguish *Von Neumann* on these same grounds and additionally argues that the Supreme Court's statement that forfeiture proceedings alone satisfy due process is dictum. [Appellant Br. at 38–43.]

These arguments are not sufficient to distinguish *Von Neumann*. Start with the contention that *Von Neumann* does not control because it was reviewing only the timeliness of remission petitions. Although this was the context in which the case arose, the Court in no way limited its language to that particular context. Instead, it said "forfeiture proceedings, without more," satisfy due process's post-seizure-hearing requirement. *Von Neumann*, 474 U.S. at 249.[4]

Nichols argues that the statement above was merely dictum. I disagree. The Court began by framing the plaintiff's argument as asserting a "constitutional right to a speedy disposition of his remission petition *without awaiting a forfeiture proceeding*." *Id.* (emphasis added). The Court then stated that it disagreed and began its analysis with the proposition that the forfeiture hearing, by itself, satisfies due process. *Id.* From that premise, it reasoned that because "remission proceedings are not *necessary* to a forfeiture determination" they are "not constitutionally required." *Id.* at 250 (emphasis in original). The Court then concluded: "*Thus* there is no constitutional basis for a claim that [Von Neumann's] interest in the car, or in the money put up to secure the bond, entitles him to a speedy answer to his remission petition." *Id.* (emphasis added). Because the Court's holding—the thirty-six-day delay in the remission proceedings did not violate due process—was derived from the premise that due process requires nothing more than a timely

---

[4] The dissent makes much of how the Court said the forfeiture proceeding was all that was required "to protect Von Neumann's property interest in the car." *Von Neumann*, 474 U.S. at 249. I do not see how this phrase renders Von Neumann's property interest in the car fundamentally different, as a matter of due process, from Nichols' property interest in his car.

forfeiture proceeding, the premise was essential to the Court's holding and gives us the rule of decision. *See Wright v. Spaulding*, 939 F.3d 695, 701 (6th Cir. 2019) (noting that a legal conclusion that is "necessary" or "contribute[s] to the judgment" is part of an opinion's holding).[5]

Nichols next tries to distinguish *Von Neumann* based on the availability of Federal Rule of Criminal Procedure 41(g). The dissent also finds Rule 41(g) relevant in arguing that *Von Neumann* is distinguishable. That rule permits a person "aggrieved by an unlawful . . . seizure of property or by the deprivation of property" to "move for the property's return." Fed. R. Crim. P. 41(g). *Krimstock* likewise made this distinction, noting that the plaintiffs in that case had no alternative mechanism for challenging the initial seizure or continued detention of their vehicles, whereas Rule 41(g) provided the plaintiff in *Von Neumann* with such a mechanism. 306 F.3d at 52 n.12, 58–60. But *Von Neumann*'s reasoning does not turn on the availability of Rule 41(g). A Rule 41(g) motion is not necessary to a forfeiture determination and so it is not constitutionally required under *Von Neumann*. *See* 474 U.S. at 250. Unsurprisingly then, *Von Neumann* makes no mention of Rule 41(g) anywhere in its constitutional analysis. *See id.* at 249–51. Instead, its sole reference to the Rule comes in a footnote in its discussion of the background of the case. *Id.* at 244 n.3. That footnote, relying on *$8,850*, notes only that "[t]he claimant may trigger the Government's initiation of forfeiture proceedings." *Id.*

For its part, *$8,850* considers Rule 41(g) in its discussion of the third *Barker* factor—the defendant's assertion of the right to a judicial hearing. 461 U.S. at 568–69. Because in that case the claimant had not filed a Rule 41(g) motion or taken advantage of other means of asserting her

---

[5] Even if this conclusion were dictum, I would still adhere to it. "[L]ower courts are obligated to follow Supreme Court dicta, particularly where there is not substantial reason for disregarding it, such as age or subsequent statements undermining its rationale." *Holt v. City of Battle Creek*, 925 F.3d 905, 910 (6th Cir. 2019) (quoting *In re Baker*, 791 F.3d 677, 682 (6th Cir. 2015)).

right to a forfeiture hearing, the Court concluded that there was good reason to believe that she "did not desire an early judicial hearing." *Id.* at 569. Thus, in considering the timeliness of a forfeiture proceeding using the factors set forth in *$8,850* and *Von Neumann*, a claimant in a state without a Rule 41(g) analogue obviously could not be faulted for not asserting her rights in that fashion. But nothing in either *$8,850* or *Von Neumann* suggested that the absence of a Rule 41(g)-type procedure would compel the state to provide an entirely separate hearing.

Finally, Nichols, again echoing *Krimstock*, argues that *Von Neumann* is distinguishable because there, while he was waiting for Customs to begin the remission proceedings, the claimant still had access to his car, after he'd posted a bond equal to the car's full value. *See Von Neumann*, 474 U.S. at 245–46. The dissent also finds this factor persuasive. For several reasons, I do not think this is enough to distinguish the case.

First, the Supreme Court barely even mentioned this fact. After discussing the return of Von Neumann's car in the facts section, the Court never explicitly returned to it in its analysis. *See Von Neumann*, 474 U.S. at 245–46. If the release of the car was crucial to the holding, you'd think the Court would have discussed it more.

Second, the statutory mechanism by which the car was released in *Von Neumann* was wholly discretionary. Under 19 U.S.C. § 1614, "the appropriate customs officer may" release a seized vehicle to "any person claiming an interest in" and willing to "pay the value of such" vehicle, "subject to the approval of the Secretary of the Treasury." Customs chose to exercise its discretion to release Von Neumann's vehicle, but it was not required to. What is more, the Court had the discretionary statutory release scheme before it and it did not condition the satisfaction of Von Neumann's due process rights on the government's use of that discretion. Instead, it held that only those procedures that were "necessary to a forfeiture determination" were "constitutionally

required." *Id.* at 250. And the release of Von Neumann's car was not *necessary* to the forfeiture determination. Had the government chosen not to release the car, in my view, the result in *Von Neumann* would not have changed.

Third, even putting these first two points aside, I am not convinced that the government's retaining of the full cash value of Von Neumann's car—rather than the car itself—distinguishes the case. On this question, Nichols argues that we should give greater protections to property interests in cars than to those in money. [OA Audio at 3:00–6:10.] However, somebody else made this same basic argument: Von Neumann himself. Like Nichols, Von Neumann argued that "the importance of automobiles to citizens in this society," merited greater due process protection. *Von Neumann*, 474 U.S. at 250–51. But the Supreme Court rejected that argument, stating, "we have already noted that . . . a forfeiture proceeding meeting the *Barker* test,"—that is, one that is constitutionally prompt—"satisfies any due process right with respect to the car *and* the money." *Id.* at 251 (emphasis added). Thus, the municipalities' retention of Nichols' car does not change the due-process analysis; Nichols is not constitutionally entitled to any hearing beyond a timely forfeiture hearing. And so, Nichols still cannot escape the conclusion that *Von Neumann* is indistinguishable.

Nichols' remaining arguments also fail. He relies on two additional circuit precedents: *Smith v. Chicago*, 524 F.3d 834 (7th Cir. 2008), *vacated by Alvarez v. Smith*, 558 U.S. 87 (2009), and *Ross v. Duggan*, 402 F.3d 575 (6th Cir. 2004). But *Smith* is no help because "[a]ll in all, [it] agree[s] with *Krimstock*"; it even adopts *Krimstock*'s analysis distinguishing *Von Neumann*. *Smith*, 524 F.3d at 837–38. I disagree with *Smith* for the same reasons I disagreed with *Krimstock*.

*Ross* does not help either. That case was also about seized cars, and the plaintiffs had the opportunity for a post-seizure "show-cause" hearing to contest both the temporary seizure and

permanent forfeiture. 402 F.3d at 578, 583. The *Ross* plaintiffs argued that these procedures were constitutionally deficient, because of, among other things, the costs of going without the car while waiting for the show-cause hearing. *Id.* at 586. We disagreed and held that a property owner's due process rights are not violated "as long as the owners received reasonable notice and a fair post-impoundment-but-pre-forfeiture opportunity *to contest ultimate forfeiture*." *Id.* at 586 (emphasis added). Indeed, *Ross* cites *Von Neumann* for that proposition: In the absence of a pre-seizure hearing, "a timely *post-seizure* opportunity to be heard prior to forfeiture" satisfies due process. *Id.* at 584 (citing *Von Neumann*, 474 U.S. at 249–50). The court's reliance on *Von Neumann* reinforces how one post-seizure opportunity to contest the ultimate forfeiture is what suffices for due process. *Ross* thus does not establish a right to a *second* post-seizure, pre-forfeiture hearing.

Applying *Von Neumann*, I conclude that the Due Process Clause guarantees only a timely forfeiture hearing, that timeliness being measured, as the Supreme Court has held, by the factors announced in *Barker v. Wingo*. Because Nichols is not constitutionally entitled to an *additional* continued-detention hearing—between the seizure and the forfeiture hearing—there was no due process right for the municipalities to violate.

KAREN NELSON MOORE, Circuit Judge, dissenting in part. There are many things the majority does not deny about Stephen Nichols's case. It does not deny that he was wrongfully deprived of the use of his car for three years. It does not deny that he had a due-process interest in the use—not just the ownership—of his vehicle. It does not deny that he has plausibly alleged that the municipal defendants failed to afford him any opportunity to seek temporary repossession of his car. It does not deny that these defendants had the discretion to do so under the relevant statutory scheme. Nor does it deny that our caselaw forecloses qualified immunity as a defense for municipal defendants when the injury for which they are allegedly liable was caused by municipal act itself. Yet it denies Nichols recourse because Nichols's lawyer stated at oral argument that there were multiple ways for the government to go about affording his client due process. Even if I were inclined to decide serious constitutional cases based on "gotcha" moments at oral argument, this would not be one of them. Nichols did not concede a flaw in his claim—to the contrary, he confirmed just how modest a due-process right he seeks. In my view, Nichols has adequately stated a constitutional claim, and we should allow this case to proceed.

As the district court noted, "[i]t is undisputed that Defendants do not routinely provide post-deprivation, pre-forfeiture hearings for civil seizures." *Nichols v. County of Wayne*, No. 18-12026, 2018 WL 6505360, at *2 (E.D. Mich. Dec. 11, 2018). Nichols claims that this failure to provide an opportunity for claimants to regain possession of their property is unconstitutional. The defendants respond that Nichols has sued the wrong entities, because the MITPA, for which they are not responsible, requires them to retain all seized vehicles, without exception. The majority does not reach the merits of Nichols's claim that the defendants' policy is unconstitutional, nor does it address the defendants' argument about state law tying their hands. Instead, it first suggests in dicta that (1) Nichols might be precluded from making a municipal-liability claim when there

has been no finding of individual-defendant liability, and that (2) Nichols might have failed to allege that the defendants caused him damages. It then holds that Nichols's claim fails because he has not alleged that the municipal defendants have a policy of failing to institute timely forfeiture proceedings. Below, I explain why each of these propositions is incorrect.

First, the majority states that "[i]t is an open question in this circuit 'whether a municipality's liability under § 1983 is predicated on first finding that an individual officer or employee is also liable.'" Maj. Op. at 5 n.4 (quoting *Rayfield v. City of Grand Rapids*, 768 F. App'x 495, 511 n.12 (6th Cir. 2019)). The majority's statement is erroneous, but it is true that several opinions issued after the first published one resolving this question have muddied the waters. Originally, we stated that "it is possible that city officials may be entitled to qualified immunity for certain actions while the municipality may nevertheless be held liable for the same actions." *Barber v. City of Salem*, 953 F.2d 232, 238 (6th Cir. 1992); *see also Garner v. Memphis Police Dep't*, 8 F.3d 358, 365 (6th Cir. 1993) ("Under the law of this circuit, a municipality may not escape liability for a § 1983 violation merely because the officer who committed the violation is entitled to qualified immunity."). This scenario could arise if a municipal employee, acting pursuant to a municipal policy or custom, committed a constitutional violation, but escaped personal liability because the plaintiff's constitutional right was not clearly established at the time of the violation.

But in *Winkler v. Madison County*, 893 F.3d 877 (6th Cir. 2018), the panel mistakenly said that our decision in *Watkins v. City of Battle Creek*, 273 F.3d 682 (6th Cir. 2001), "broadly state[d] that the imposition of municipal liability is contingent on a finding of individual liability under § 1983." 893 F.3d at 900. Yet *Watkins* does not say this. It says only that "[i]f no *constitutional violation* by the individual defendants is established, the municipal defendants cannot be held

liable under § 1983." 273 F.3d at 687 (emphasis added). *Winkler*'s gloss on *Watkins* was plainly incompatible with our prior, published holdings—that the precondition for municipal liability is the presence of a constitutional violation, not a finding of individual liability. On this specific issue regarding municipal liability, there was no confusion until *Winkler* introduced it. Thus, citing to *Winkler*, we uttered the line that the majority now quotes: "It is undecided whether a municipality's liability under § 1983 is predicated on first finding that an individual officer or employee is also liable." *Rayfield*, 768 F. App'x at 511 n.12. It should be clear, by now, that this statement was in error. There is no "open question in this circuit," Maj. Op. at 5 n.4, about whether a plaintiff must first show individual liability in order to show municipal liability. Our controlling precedent says that there is no such requirement.[1]  *See* 6 Cir. R. 32.1(b).

Beyond the qualified-immunity escape hatch, there are still other instances in which a lack of individual liability will not foreclose a municipal-liability claim. As Judge Cole's thoughtful concurrence in *Epps v. Lauderdale County*, 45 F. App'x 332 (6th Cir. 2002), lays out, there are numerous ways in which municipalities themselves may be held responsible for constitutional violations, including when "a government actor in good faith follows a faulty municipal policy," when "municipal liability is based on the actions of individual government actors other than those who are named as parties," and when "no one individual government actor . . . violate[s] a victim's constitutional rights," but the combined acts of a group of actors cause such a violation. *Id.* at 334–35 (citing cases); *see North v. Cuyahoga County*, 754 F. App'x 380, 390 (6th Cir. 2018) ("In a subset of § 1983 cases . . . the fact that no individual defendant committed a constitutional violation—e.g., acted with deliberate indifference to an inmate's serious medical need—might not

---

[1] I note that the defendants make no argument to the contrary. It is the majority—not the defendants—that floats this unsupported, alternative barrier to relief.

necessarily 'require a finding that no constitutional harm has been inflicted upon the victim, nor that the municipality is not responsible for that constitutional harm.'") (quoting *Epps*, 45 F. App'x at 334 (Cole, J., concurring)). Again, the defendants do not argue otherwise.

Next, the majority suggests in a footnote that there may have been a "missing allegation" in Nichols's complaint as to whether the municipality actually caused him damages. Maj. Op. at 6 n.5. But the plain language of the complaint proves the majority wrong: "Nichols has been and continues to be damaged by the Defendants' failure to provide a prompt post-deprivation hearing because he has been unnecessarily deprived of the use of his vehicle, the opportunity to perform necessary maintenance on it, expended money on insurance for a vehicle that he can't use, and has been forced to pay for rides, use taxis and inconvenient public transit to get to and from work and perform daily necessities of life." R. 1 (Compl. ¶ 26) (Page ID #6–7). The majority faults Nichols for not "alleg[ing] that he would have prevailed at an intervening hearing if it had been offered," Maj. Op. at 6 n.5, but ignores that he specifically alleges that continued deprivation of his vehicle imposes an immense hardship on him, R. 1 (Compl. ¶ 26) (Page ID #6–7). I take this as an allegation that a retention hearing, focusing on hardship, would come out in his favor. Even if the majority were correct that Nichols failed to lay out causation for purposes of calculating compensatory damages, he need not make this showing for nominal damages. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("[T]he denial of procedural due process should be actionable for nominal damages without proof of actual injury."). There is thus no deficiency in Nichols's complaint with respect to alleging that the municipal defendants caused him damages. And regardless, the defendants have forfeited any argument to this effect. Once again, the majority improperly raises—but does not resolve—an argument that no defendant has made in this case.

The majority then sets up its holding by pointing to Nichols's lawyer's statement at oral argument that either a prompt retention hearing or a quickly initiated forfeiture proceeding would comply with the Constitution. *See* Maj. Op. at 12. According to the majority, "because Nichols is not entitled to elect his preferred procedures, he can adequately state a constitutional claim only if he alleges *both* that the municipalities have a custom or policy of failing to provide a stand-alone continued-detention hearing and that the municipalities have a custom or policy of failing to initiate constitutionally-timely MITPA forfeiture proceedings." *Id.* Nichols's complaint lacks sufficient allegations regarding the defendants' failure to institute timely forfeiture proceedings, says the majority, so his claim fails. *See id.* ("The mere assertion that it *can* take months or years to initiate a forfeiture proceeding does not allege a 'policy or custom' to that effect.").

This misreads Nichols's complaint and misunderstands the nature of liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). First, the majority omits the following allegation from Nichols's complaint: "On information and belief, Defendants notice for forfeiture hundreds of vehicles every year, hold them without process, and fail, in each case, to provide prompt post-seizure, pre-forfeiture hearing in front of a neutral decision-maker." R. 1 (Compl. ¶ 43) (Page ID #10). Combined with Nichols's allegation that "[i]t can take months, or even years, for the Defendants to initiate a case in state court seeking forfeiture of the vehicle," *id.* ¶ 4 (Page ID #2), this constitutes a plausible allegation that the municipal defendants are not regularly initiating forfeiture proceedings in a timely fashion. If the municipal defendants regularly initiated forfeiture proceedings within, for example, one week of the expiration of the twenty-day period described in § 445.79b(1)(c) of the MITPA, there would be no basis for Nichols alleging a failure to provide "prompt" retention hearings—prompt forfeiture proceedings would obviate the need for them. To read the complaint more narrowly is to ignore the thrust of Nichols's

claim in this case: The municipal defendants, as a policy or custom, are allowing too much time to pass without giving claimants a chance to repossess their property.

Moreover, Nichols is not required under *Monell* to make allegations regarding the frequency with which the municipal defendants take months or years to initiate forfeiture proceedings. One of the ways a plaintiff can demonstrate an "illegal policy or custom" under *Monell* is by showing "the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Even if the defendants delayed initiating forfeiture proceedings on a minority of occasions, per Nichols's complaint they would still have a custom of permitting constitutional violations on each of these occasions by not providing retention hearings. Put another way, it is sufficient for Nichols to allege that *in situations in which forfeiture proceedings are delayed*, the municipal defendants routinely violate property owners' constitutional rights by not providing retention hearings.

Relatedly, the majority suggests that Nichols's articulations of the municipal defendants' policy and how he wants it fixed are too vague to make out a constitutional claim. Specifically, the majority states that "[w]e do not know the outer boundaries of Nichols' position, as the court redirected its line of questioning, once learning that, at a minimum, Nichols viewed a forfeiture proceeding filed 50 days after notice as satisfying due process." Maj. Op. at 9 n.7. This is false: Thirty days *is* the outer boundary that Nichols's counsel readily supplied upon questioning at oral argument. The following colloquy transpired:

| | |
|---|---|
| Judge: | If a forfeiture hearing is held without exception seven days after the person evidences objection to the forfeiture, is there a bail hearing necessary? |
| Counsel for Nichols: | No. |
| Judge: | If it's held a year later, is a bail hearing necessary in the middle? |
| Counsel for Nichols: | Yes. |

| Judge: | OK. At what point do we draw that line? |
|---|---|
| Counsel for Nichols: | I would submit that the history of due process . . . points to something like 30 days, at a minimum. |

OA Audio at 11:00–11:29. Note that Nichols's counsel did not say, "A hearing after 30 days would provide due process but I couldn't tell you where exactly to draw the line." In fact, he took an unambiguously clear position: The constitutional minimum required—or in other words, the temporal boundary that the government may not exceed—is 30 days. This *is* "the outer boundar[y] of Nichols' position." Maj. Op. at 9 n.7. When the majority says that Nichols has not told us "how quick would be quick enough," *id.* at 9, it simply ignores his precise answer to this question. Per Nichols, 30 days would be quick enough, as would be 29 days, 28 days, 27 days, or *any* lesser amount of time. And conversely, per Nichols, 31 days would not be quick enough, nor would 32 days, 33 days, 34 days, or *any* greater amount of time. How could Nichols have been any clearer? I am unpersuaded by the majority's efforts to unearth flaws in Nichols's well-pleaded complaint.

Instead, I believe Nichols has plausibly alleged the existence of a policy or custom not to provide an opportunity for seized-vehicle owners to repossess their vehicles while forfeiture proceedings are pending. Accordingly, I would proceed to an analysis of whether Nichols has alleged the existence of a policy or custom that violates the Constitution. But because the majority does not reach the constitutional question, I will keep my observations about this question brief.

The threshold issue is whether precedent from the Supreme Court or this court forecloses the due-process inquiry. The City[2] argues that the Supreme Court's decisions in *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555 (1983), and *United States v. Von Neumann*, 474 U.S. 242 (1986), "confirm[ed] that the due process right

---

[2] The Defendant County, like the majority, "does not take a position on the ultimate constitutional question." Appellee County Br. at 5.

to a meaningful post-seizure hearing requires only a forfeiture proceeding." Appellee City Br. at 15. But neither of these cases determined whether the government is required to provide the purported owners of seized property with a prompt opportunity to demonstrate that their property need not be retained pending resolution of forfeiture proceedings. In *$8,850*, the Supreme Court held that the government's eighteen-month delay in initiating a forfeiture proceeding over seized currency did not violate a claimant's right to due process of law. 461 U.S. at 569. The question of retaining versus releasing seized property, pending the resolution of the forfeiture action, was not at issue. The petitioner "challenge[d] only the length of time between the seizure and the initiation of the forfeiture trial." *Id.* at 564. Because the issue was limited to the timing of this proceeding, and whether it was unconstitutionally delayed, the Court applied the speedy-trial test from *Barker v. Wingo*, 407 U.S. 514 (1972), to determine that a delay in commencing the forfeiture proceedings was justified. 461 U.S. at 564. By contrast, Nichols's claim "does not concern the speed with which civil forfeiture proceedings themselves are instituted or conducted." *Krimstock v. Kelly*, 306 F.3d 40, 68 (2d Cir. 2002) (Sotomayor, J.), *cert. denied*, 539 U.S. 969 (2003).

*Von Neumann* is similarly distinguishable. The claimant in that case challenged only "a 36-day delay by the United States Customs Service in responding to a remission petition," not the continued deprivation of his property while his forfeiture case was pending. 474 U.S. at 243. Indeed, two weeks after the claimant's car was seized, he posted a $24,500 bond for the car and reestablished possession of it, but still filed suit to challenge the length of time it took the government to decide whether to institute forfeiture proceedings at all. *Id.* at 245–46. Whereas Von Neumann sought timely adjudication of a remission petition to terminate a forfeiture proceeding, Nichols sought the use of his car while it was undetermined whether he would ultimately have to forfeit it. Von Neumann did not seek due-process protection for any such

interest in the use of the vehicle; he had enjoyed the use of his car since he posted bond and the car was released to him. *See id.* at 245. Thus, *Von Neumann* does not resolve the issue before us because retention of a seized vehicle implicates a unique property interest, and thus triggers unique due-process protections.[3] *See Krimstock*, 306 F.3d at 53 ("[I]t a non sequitur to hold . . . that because postponing the commencement of a forfeiture action pending the underlying criminal proceeding may not offend due process, retention of the seized vehicle without a hearing throughout that same period, or longer, is constitutionally permissible."). Furthermore, Nichols's predicament is distinguished from Von Neumann's in that the MITPA bars "action[s] to recover personal property." Mich. Comp. Laws § 445.79b(2). By contrast, Von Neumann had the ability to file a motion under Federal Rule of Criminal Procedure 41(g) for return of the seized property during the forfeiture litigation.[4]

---

[3] The fact that Nichols acknowledged at oral argument that prompt commencement of forfeiture proceedings could satisfy his due-process concern does not turn this into a redux of the *Von Neumann* case. Nichols does not demand more speedy initiations of the proceedings that ultimately determine whether owners have to forfeit ownership of their property, but rather more speedy determinations of whether they can use their property while ownership determinations are pending. His "concession," Maj. Op. at 9, at oral argument is consistent with this theory: Whether through a prompt forfeiture hearing or a prompt retention hearing, due process requires that an owner be permitted to challenge the continued dispossession of her or his personal property.

[4] The City argues that Von Neumann's ability to file a Rule 41(g) motion is not relevant to the due-process analysis, because the option to file such a motion under the Federal Rules of Criminal Procedure was lost once forfeiture proceedings were initiated, and resolving such a motion could itself be subject to substantial delay. Neither of these attempts to minimize the import of a Rule 41(g) motion is persuasive. The first argument overlooks a primary reason a claimant might pursue relief through a Rule 41(g) motion—delay in the initiation of forfeiture proceedings. The second argument suggests that seeking judicial review of seized property is of little value, because such review could be delayed. Possible judicial delay notwithstanding, a Rule 41(g) motion to return property is an important tool for claimants. As the Advisory Committee has explained, the Rule "provides that . . . a person whose property has been lawfully seized may seek return of property when aggrieved by the government's *continued possession* of it." Fed. R. Crim. P. 41(g), Advisory Committee Notes (1989 Amendment) (emphasis added).

Judge McKeague's concurring opinion ignores the distinction between different types of due-process interests. This is clearest in the opinion's selective quotation of the "forfeiture proceedings, without more" phrase from *Von Neumann*. *See* Concurring Op. at 18 ("[The Supreme Court] said 'forfeiture proceedings, without more,' satisfy due process's post-seizure-hearing requirement. *Von Neumann*, 474 U.S. at 249."). The Supreme Court's full statement was as follows: "Implicit in this Court's discussion of timeliness in *$8,850* was the view that the forfeiture proceeding, without more, provides the postseizure hearing required by due process *to protect Von Neumann's property interest in the car*." 474 U.S. at 249 (emphasis added). The concurring opinion reads the emphasized words out of the Supreme Court's opinion. The Court properly limited its due-process analysis to the precise due-process interest at stake, something the concurring opinion wishes not to do. Relatedly, the concurring opinion takes out of context *Von Neumann*'s statement that "a forfeiture proceeding meeting the *Barker* test satisfies any due process right with respect to the car and the money." 474 U.S. at 251. This statement appeared as the Court entertained, briefly, whether the remission procedure "itself creates a property right which cannot be taken away without due process *that includes a speedy answer to a remission petition*." *Id.* at 250 (emphasis added). Thus, even when reasoning hypothetically, the Court addressed due-process rights that were linked to "timely disposition" of a remission petition—not to temporary repossession of a vehicle. *Id.*

The concurring opinion also states that "[i]f the release of the car was crucial to the [*Von Neumann*] holding, you'd think the Court would have discussed it more." Concurring Op. at 20. But why would we expect exposition from the Supreme Court on due-process protections for a property interest that had nothing to do with the case that the Court was deciding? Similarly, the fact that the property-release procedure in the case (19 U.S.C. § 1614) was "wholly discretionary,"

Concurring Op. at 20, was irrelevant to the case—it did not alter the nature of Von Neumann's property interest. The concurring opinion speculates that, "in [its] view," the holding of *Von Neumann* "would not have changed" if the facts had been critically different. *Id.* at 21. I fail to see the relevance of such conjecture, which represents "a counterfactual hypothetical [that the Court] [wa]s powerless . . . to decide." *Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246, 2295 (2020) (Sotomayor, J., dissenting). Whether Von Neumann repossessed his car as a matter of government rule or discretion, the point is that his lawsuit had to do with timely disposition of a federal remission petition, not conditional repossession of a seized vehicle.

All parties cite our decision in *Ross v. Duggan*, 402 F.3d 575 (6th Cir. 2004), for support, but that case did not address the issue before us. In *Ross*, we addressed a constitutional challenge to the City of Detroit's enforcement of Michigan's nuisance-abatement statute, which resulted in the seizure and impoundment of the plaintiffs' vehicles. *See generally* Mich. Comp. Laws § 600.3801 *et seq.* As relevant here, the plaintiffs argued that insufficient postimpoundment procedures denied them due process. We found this cause of action "facially deficient" due to the presence of probable cause justifying the initial seizures, "as long as the owners received reasonable notice and a fair post-impoundment-but-pre-forfeiture opportunity to contest ultimate forfeiture." *Ross*, 402 F.3d at 586. Unlike in this case, however, "the plaintiffs were each afforded an opportunity to request a prompt *post*-impoundment 'show-cause' hearing to challenge both the temporary seizure and the threatened permanent forfeiture," which, if successful, "would result in the immediate restoration" of their vehicles. *Id.* at 583. Nichols was not afforded such an opportunity. In *Ross*, we did not consider whether procedural due process would be lacking if the City of Detroit had detained the plaintiffs' vehicles indefinitely without a preforfeiture, show-cause hearing, because the plaintiffs conceded that "each of them had received notice and an opportunity

to contest the threatened nuisance-abatement forfeitures of their motor vehicles at a 'show-cause' hearing." *Id.* at 586.

Without any precedent resolving the issue before us, I would follow the Second Circuit's unanimous opinion in *Krimstock v. Kelly*—the only published, appellate opinion on point[5]—in concluding that the failure to provide some sort of retention hearing for purported owners of seized property violates the Constitution. In *Krimstock*, then-Judge Sotomayor wrote for a unanimous panel that New York City's vehicle-forfeiture scheme, which allowed the city to "seize a motor vehicle following an arrest for the state-law charge of driving while intoxicated ('DWI') or any other crime for which the vehicle could serve as an instrumentality" without any sort of subsequent retention hearing, violated the Fourteenth Amendment, *inter alia*. 306 F.3d at 44. Under the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the court reasoned that the private interest in the ownership and use of a vehicle was significant, the risk of erroneous deprivation was "reduced" given the "context of DWI owner-arrestees," and the government's interest was low, given alternative methods—such as the posting of bond in exchange for a seized vehicle—in preventing an owner from absconding with this property. *Krimstock*, 306 F.3d at 64. "Balancing the *Mathews* factors," the Second Circuit concluded that due process of law required a hearing in which a claimant could demonstrate that "means short of retention of the vehicle can satisfy the City's need to preserve it from destruction or sale during the pendency of proceedings." *Id.* at 67.

If anything, the *Mathews* factors support Nichols's claim even more than they supported the plaintiffs' claim in *Krimstock*. First, as to the weight of the private interest, "the length or

---

[5] The Seventh Circuit issued a similar opinion, but the Supreme Court vacated it as moot. *See Smith v. City of Chicago*, 524 F.3d 834 (7th Cir. 2008), *vacated as moot sub nom. Alvarez v. Smith*, 558 U.S. 87 (2009).

finality of the deprivation," *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982), is greater here than in *Krimstock*. Under New York City law, then-Judge Sotomayor noted, the City was required to bring a forfeiture action "twenty-five days after a claim is made for the vehicle." *Krimstock*, 306 F.3d at 54 (citing 38-A R.C.N.Y. § 12–36(a)). Under the MITPA, by contrast, the only temporal requirement is that the prosecuting attorney must bring a forfeiture action "promptly" after receiving the property claim and bond. Mich. Comp. Laws § 445.79b(1)(c). There is no specific deadline, even when the property owner has demanded that her property be returned. *Cf. Krimstock*, 306 F.3d at 54 (leaving the timing of initiating a forfeiture action up to the "discretion" of the New York City Property Clerk only when "no demand is made" by the owner of the property). The private interest is thus even weightier here than in *Krimstock*.[6]

Second, the risk of erroneous deprivation is more significant here. In *Krimstock*, the Second Circuit noted the low risk of erroneous deprivation in the case of DWI arrestees whose cars were seized "because a trained police officer's assessment of the owner-driver's state of intoxication can typically be expected to be accurate." 306 F.3d at 62–63. Similarly, in *People v. One 1998 GMC*, 960 N.E.2d 1071 (Ill. 2011), *cert. denied*, 556 U.S. 1034 (2012), the Illinois

---

[6] Language from our decision in *United States v. Kingsley*, 241 F.3d 828 (6th Cir.), *cert. denied*, 534 U.S. 859 (2001), regarding the privilege of operating a motor vehicle is not to the contrary. In *Kingsley*, we reviewed a district court's ban on a defendant's probationary operation of motorized vehicles. *Id.* at 838. In response to the defendant's argument that such a ban unduly deprived him of personal liberty, we observed that "operating a motor vehicle on the public thoroughfares, under *any* circumstances, is *not* a fundamental personal *right*, but instead is a mere societally-bestowed *privilege*, granted by the grace of the state, which an adult citizen must earn, and which the government can restrict or invalidate, even administratively, in the rational furtherance of a legitimate public purpose." *Id.* Apart from the narrower question of an individual's "right" to operate a vehicle on public thoroughfares, however, we have stated clearly that an individual may have a substantial "interest" in both owning and utilizing a vehicle. *Henry*, 655 F. App'x at 462. Nichols has not alleged that the temporary seizure of his vehicle infringed on his substantive *rights*; he merely argues that given the significant weight of his *interest* in this vehicle, he is due a commensurate level of process before the vehicle may be retained by the government.

Supreme Court emphasized that it was unlikely that a police officer would be mistaken about probable cause "especially for crimes such as the DUI and DWLR offenses involved here." *Id.* at 1087. Probable-cause determinations under the MITPA, by contrast, are more complex. Unlike assessing a driver's blood-alcohol content, the determination of whether a person, "[w]ith intent to defraud or violate the law," has unlawfully used another person's identifying information is less immediately verifiable. Mich. Comp. Laws § 445.65(1)(a). The statute itself recognizes the numerous circumstances that may not qualify as fraud under the MITPA, for instance when the accused uses the identifying information of a person with their consent (unless the person giving consent knows that the information will be used to commit an unlawful act), when the accused had been acting in otherwise lawful enforcement of a person's legal rights, or when the accused had given "a bona fide gift" to a person in exchange for use of their identifying information. *Id.* § 445.65(2)(a), (b), (d). To be clear, these circumstances are listed as defenses in the statute, *id.* § 445.65(2), and the validity of probable cause is not dependent on the viability of a defense, *see Fridley v. Horrighs*, 291 F.3d 867, 873 (6th Cir. 2002); moreover, an officer's judgment that probable cause exists should be accorded "due weight," *Ornelas v. United States*, 517 U.S. 690, 699 (1996). Still, determining at a traffic stop whether a driver knowingly used another person's identifying information is more complex than determining whether the driver was "operating while intoxicated." Mich. Comp. Laws § 257.625(1). The risk of an erroneous deprivation of property here is thus higher than the "reduced" risk in *Krimstock*. 306 F.3d at 62.

On balance, here the private interest is substantial, the erroneous risk of deprivation is moderate, there is considerable value in additional safeguards, and the government's interest is low. Accordingly, the *Mathews* balancing test tips in Nichols's favor. For these reasons, I would follow the Second Circuit in holding that vehicle owners must be afforded a prompt, postseizure

hearing before a neutral decisionmaker to determine whether "means short of retention of the vehicle can satisfy the [government's] need to preserve it from destruction or sale during the pendency of proceedings." *Krimstock*, 306 F.3d at 67.

The majority suggests that, alternatively, Nichols's claim is barred for failure to allege the violation of a clearly established right. But this clearly-established-right defense does not apply "[w]hen an injury arises directly from a municipal act, . . . because fault and causation obviously belong to the city." *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994–95 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 738 (2018).[7] "[T]here is a significant difference between a *Monell* claim alleging that a municipal policy or custom caused a constitutional violation . . . and a *Monell* claim alleging that a municipality's failure to train amounted to deliberate indifference." *Brennan v. Dawson*, 752 F. App'x 276, 288 (6th Cir. 2018). When the first type of *Monell* claim is at issue, as is the case here, the violated right need not be clearly established. *Id.* The majority argues that, as in *Arrington-Bey*, the policy-based *Monell* claim here is actually a failure-to-train claim, so the clearly-established-right defense applies. But we said nowhere in *Arrington-Bey* that claims based on a municipality's failure to institute a policy were per se identical to claims based on municipality's failure to train their employees. All we said in that case was that a plaintiff relying on a deliberate-indifference theory of municipal liability had to do more than show the lack of a policy. *See Arrington-Bey*, 858 F.3d at 995 ("In a deliberate-indifference case, the claimant must show not only that an employee's act caused a constitutional tort, but also that the city's failure to train its employees caused the employee's violation *and* that the city culpably declined to train its 'employees to handle recurring situations presenting an obvious potential for such a violation.'")

---

[7] By contrast, the defense does apply to Nichols's failure-to-train allegation against Kim Worthy, in her official capacity, and thus I agree with the majority that this claim fails. *See* Maj. Op. at 10–11.

(quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)). This case, unlike *Arrington-Bey*, is not about the actions of individual municipal employees and whether a municipality's deliberate indifference in training them is what led to the alleged harm. Rather, Nichols alleges that the City and County had a policy of failing to provide retention hearings for owners of vehicles seized pursuant to the MITPA. This claim does not involve failure-to-train allegations, and therefore Nichols need not demonstrate that these municipal defendants violated a clearly established right.

***

In all, the majority manages to avoid remedying a significant constitutional violation by focusing on one line uttered by Nichols's counsel at oral argument. This utterance was not a concession of error, but a clarification of just how narrow the scope of this case is. Although the majority does not resolve the constitutional question in this case, it sanctions the warrantless, three-year deprivation of Nichols's vehicle, despite the government's undisputed failure to offer him any means of challenging this prolonged deprivation. Those following trends in our court's jurisprudence will note that in the span of a single month, we have countenanced stripping thousands of indigent Tennesseans of their driver's licenses, *see Robinson v. Long*, 966 F.3d 521 (6th Cir. 2020) (Cole, C.J., dissenting from denial of rehearing en banc), and seizing Michiganders' vehicles without a chance for them to demonstrate, *pendente lite*, the extreme hardship posed by such seizure. Neither precedent nor prudence compels this trend. For these reasons, and the ones stated above, I dissent.